## 238   St. Louis Bridge Co. v. East St. Louis et al.

## The St. Louis Bridge Company

*v.*

## The City of East St. Louis et al.

*Filed at Mt. Vernon June 20, 1887.*

1. TAXATION—*municipal taxation—of the proper subjects of it—bridge structures.* Such portion of a bridge structure which is owned by a private corporation, as in the case of the bridge over the Mississippi river at St. Louis, owned by the St. Louis Bridge Company, as is situate within the corporate limits of a city, will be subject to taxation for corporate purposes, equally with all other property within its limits. The fact that such structure is upon land covered with water, not susceptible of improvement in the way of streets, etc., furnishes no ground of exemption from city taxes.

2. SAME—*the rule of uniformity.* Under the constitution, all municipal taxes are required to be uniform. To let property within the corporate limits escape taxation because situated upon ground covered by a navigable stream, and so not susceptible of being laid out into lots capable of ordinary use, would be in violation of this constitutional provision.

3. SAME—*benefits to property taxed, as a basis for taxation.* A city tax upon a bridge and approaches, will not be enjoined for the reason that such property has received no benefit or protection from the city for the taxes paid on the same. It is no valid objection to a tax levied for corporate purposes, that the owner can not see that his property is benefited or protected by the expenditure of the taxes, or that it does not, in fact, derive any appreciable benefit therefrom.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. G. & G. A. KOERNER, for the plaintiff in error:

Municipalities can only impose taxes upon their citizens for corporate purposes, Const. of 1870, art. 9, secs. 9, 10.

It stands admitted by the demurrer, that the bridge company has never derived any benefits or protection from the city for any part of said bridge, since its completion in 1874.

Power to tax is granted for the benefit of the whole people, and none have a right to complain if the power is fairly exercised, and the proceeds properly applied, to discharge the

obligations for which the taxes were imposed. Cooley on Taxation, (4th ed.) p. 4, note 1. The same author, on page 1, note 1, quotes the definition of Montesquieu's Spirit of the Law, (book 13, chap. 1,)—"What are taxes but the revenue collected from the people for things useful and conducive to their welfare, universally."

It is a rule laid down by the courts, and is, indeed, self-evident, without any legal precedent, that "taxation and protection are reciprocal." Cooley on Taxation, (4th ed.) 14.

In those cases, the courts admit that the extension of the limits of a city or town, so as to include, in its actual enlargement, as manifested by houses and population, adjoining lands, is to be deemed a legitimate exercise of the taxing power; but they declare that an indefinite or unreasonable extension, so as to embrace lands or farms at a distance from the local government, does not rest upon the same authority. *City of Covington* v. *Southgate*, 15 B. Mon. 491; *Arbegast* v. *Louisville*, 3 Bush, 271; *Swift* v. *Newport*, 7 id. 37; *Courtney* v. *Louisville*, 12 id. 419; *Morford* v. *Unger*, 8 Iowa, 8; *Fulton* v. *Davenport*, 17 id. 404; *Longworth* v. *Dubuque*, 13 id. 86; *Buell* v. *Bell*, 20 id. 282; *Bradshaw* v. *Omaha*, 1 Neb. 282.

The identical question now before this court has been passed upon by the Court of Appeals of Kentucky, in the case of *Louisville Bridge Co.* v. *City of Louisville*, 81 Ky. 189.

Mr. CHARLES W. THOMAS, for the defendants in error:

The case of *Louisville Bridge Co.* v. *City of Louisville*, 81 Ky. 189, has no application here. The constitution of Kentucky contains no provision concerning taxation. The courts of that State held the clause of their State constitution prohibiting the taking of private property for public use, may be invoked against unjust taxation. *Cheaney* v. *Hooser*, 9 B. Mon. 330.

Our State constitution, like that of 1848, requires all taxation to be uniform within the taxing district. *Chicago* v. *Larned*, 34 Ill. 275; *Madison County* v. *People*, 58 id. 456.

The charter of the city of East St. Louis makes the western boundary of the city the western boundary of the State. Again, the boundary of the State is the boundary of the township and the school district, and no complaint is made as to any State, township or school taxes. The doctrine that land under waters of a navigable stream ought not to be taxed for city purposes, because it can not be laid off into lots, ought certainly to extend to road and bridge taxes, for it can not be benefited by any roads or bridges that can be built with the road tax. But there is no complaint as to these taxes.

It is claimed, however, that because the plaintiff in error gets no benefit from the city taxes it pays, or substantially none, therefore it should be exempted from paying them. The contention is, that a court, whenever a municipal tax is levied, will investigate the expenditures of the municipality made in the past, and if, in its judgment, the money raised by taxation has not been spent in procuring such things as the court or complaining tax-payer thinks ought to have been procured, the court will suspend the statute permitting an annual tax to be levied for municipal purposes, and abrogate the constitutional provision requiring that tax to be equal and uniform, and obliterate the offending corporation by shutting off its revenues. This position can not be sustained for a moment. *Glass Co.* v. *McCaleb*, 81 Ill. 562; *Cary* v. *Pekin*, 88 id. 154.

Mr. Justice Shope delivered the opinion of the Court:

This was a bill for injunction, to restrain the collection of the city taxes levied and assessed by the corporate authorities of the city of East St. Louis, for the year 1885, upon all that part of the bridge across the Mississippi, and connecting

the cities of East St. Louis and St. Louis, between the west line of Front street, in the city of East St. Louis, and the middle of the Mississippi river. Plaintiff in error, a corporation existing under the laws of the State of Missouri, became the owner of the bridge and its approaches in 1879, and as such owner exhibited this bill in the circuit court of St. Clair county, where, on demurrer being interposed, the bill was dismissed, and the record is brought to this court by writ of error.

It appears from the bill, that the "bridge and approaches are within the city limits of the city of East St. Louis, which extend westward to the boundary line of the State, to-wit, the middle of the Mississippi river, but that a great part, and the most valuable part, of said bridge structure is west of the east bank of the Mississippi river, and west of the western line of Front street, in the city of East St. Louis, and is in and over the Mississippi river, and upon territory not in any way improved or even improvable on the part of the said city of East St. Louis;" that in 1874 the assessor of St. Clair county made a survey of the bridge and approaches, and duly recorded the same, by which it appeared that the bridge structure, for tax purposes, extended to a point taken to be the middle of the Mississippi river, and that since that time the bridge structure had been regularly assessed as real estate by the St. Clair county assessor, and, since that county adopted township organization, by the township assessor, for State, county, township, school, road and bridge and city purposes, and such taxes paid by plaintiff in error; that the assessed valuation of the bridge and approaches within the State of Illinois, for 1885, as equalized, was $946,000, and the taxes assessed thereon for that year aggregated $27,500, of which $15,136 was the city taxes of the city of East St. Louis. From an exhibit to the bill, it appears that the timber and iron trestle-approaches to the bridge extend 3348 feet, passing in

16—121 Ill.

its course across and over a number of streets and avenues within the city of East St. Louis; that this approach joins the main bridge at a point about the western line of Front street, in that city,—a street parallel with the water line of the Mississippi river; that the bridge proper begins at a point $252\frac{1}{2}$ feet east of the ordinary water line of the river, and that from such water line to the centre of the second span of the bridge, the distance is $762\frac{1}{2}$ feet,—that is to say, the length of the approach is 3348, and of the bridge proper, and within the limits of the city, is 1015 feet. It is averred in the bill, that the Mississippi river is a navigable stream; that that part of the bridge eastward of the western boundary of the State and city, in and over the Mississippi river, and on land covered by that river, which for that reason could never be used by the city for any purposes of improvement, is three times more valuable than that part of the bridge structure within the improved and improvable part of the city,—that is to say, the $3600\frac{1}{2}$ feet of bridge and approaches to the eastward of the water line of the river is only one-fourth as valuable as the $762\frac{1}{2}$ feet of the bridge proper, from the water line of the river to the State boundary, (the centre of the second span of the bridge.) The further averment is, that in the preceding ten years plaintiff in error has paid city taxes upon such bridge structure to the amount of $125,000; that it has not, during that time, derived any protection for any part of the bridge structure from the municipal corporation, nor has a dollar of the heavy taxes it has paid to the city been by the city spent for the use or protection of the bridge; that plaintiff in error has, at heavy expense, lighted the bridge and approaches; policed it with its own police force; built and maintained its own water works, laying pipes, erecting water and fire-plugs, not only on its own structure, but under and along the streets of the city; maintained its own apparatus for extinguishing fires, the city having no fire department; sprinkled the bridge and approaches; cleaned its

roadway and the city's streets and dykes leading to the bridge, to accommodate the team bridge-traffic; employed physicians and provided hospital accommodations for its injured employes, the city having no public hospital, dispensary or physician. And finally averring the insolvency of the city, and that as to all that part of the bridge beyond the western line of Front street, and which is situated in and over the Mississippi river, the city tax was illegally and unconstitutionally levied, and that such illegal tax was equal to three-fourths of the whole city tax levied upon the bridge structure, viz., three-fourths of $15,136, equaling $11,352.

While the legality of the city tax levied by the corporate authorities of East St. Louis for the year 1885, upon all that part of the bridge of plaintiff in error east of the middle of the Mississippi river and west of the west line of Front street in that city, is challenged, it is conceded by the bill, and by counsel for plaintiff in error, in printed argument, that the western boundary of the State of Illinois is the middle of the Mississippi river, and, also, that the corporate limits of East St. Louis extend westward to the boundary line of the State. And such is the fact. 1 Charters and Constitutions, 436; Constitutions of Illinois, 1818, 1848, 1870; Charter of East St. Louis, March 26, 1869; 1 Private Laws of 1869, p. 886, art. 1, sec. 2.

The bill proceeds upon the theory and assumption that the middle of the Mississippi river, and consequently the State boundary and western limit of the city, is the point established by the assessor of St. Clair county in his survey of the bridge structure for taxation, in 1874, namely, a point indicated by the middle of the second span of the bridge proper, and distant to the westward from the water line on the east shore of the river, at the ordinary stage of water, 762½ feet, or, from the west line of Front street, about 1015 feet. It does clearly appear from the bill, that from the time the bridge was surveyed by the assessor of St. Clair county, in

1874, (which was the same year the bridge was completed and opened to traffic,) the municipal authorities of St. Clair county and of the city of East St. Louis have asserted the correctness of that survey by levying the taxes for State, county, township, school, road and bridge and city purposes, upon all that part of the bridge and approaches lying eastward of the middle of the second span of the bridge, and that the plaintiff in error, and those from and through whom it derives title to the bridge, have acquiesced therein by paying such taxes to and including the levies for the year 1884. The State boundary at this point, as also the western limit of the city, is not, therefore, in dispute.

But the contention of plaintiff in error is, first, that because the territory within the corporate limits of the city of East St. Louis, to the westward of the west line of Front street, is so situated, by being covered by the waters of this navigable river, that it is "not in any way improved or even improvable on the part of said city," therefore, a superstructure, resting on abutments and piers imbedded in such territory, however valuable, can not be taxed for municipal corporate purposes; and second, that in the ten years preceding the filing of this bill, plaintiff in error had paid to this municipal corporation, taxes to the amount of $125,000, no part of which had been expended by the city in affording protection to the property thus taxed, and therefore it could not tax this property for municipal corporate purposes.

The charter of the city of East St. Louis vests the municipal corporation with power to levy taxes upon property within its corporate limits, for corporate purposes. This is neither denied nor questioned. The tax levied by the city for 1885, upon the property of plaintiff in error, is, so far as the bill discloses, a corporate tax levied for corporate purposes, and the legal character of this tax is not questioned. The power to tax existing, and the character of the tax imposed being legal, the only question calling for our determination

is, is the particular property upon which such tax has been imposed, subject to such taxation.

It seems to us clear, that the particular property taxed, namely, all that part of the bridge and approaches to the eastward of the middle of the second span of the bridge, is within the territorial corporate limits of the city of East St. Louis,—and this is so, regardless of the fact that such structure, in part, rests upon and extends over a part of such territory covered by the waters of this navigable stream. The fact that some part of the territory within the corporate limits of a city is covered by navigable waters, and that it may be impracticable for such territory to be laid off into lots capable of ordinary use and occupation, and into streets and alleys for ordinary public use, in no way affects the jurisdiction of the municipal corporation, for all corporate purposes, in and over such territory. Not only is such territory, so far as it may be occupied, acquired or reclaimed, and all forms of property having a *situs* thereon, subject to the civil jurisdiction for purposes of taxation, but the corporate powers and jurisdiction, as defined in the city charter and expressed in its ordinances, civil and criminal, or exercised through its various departments or agencies, extend over and embrace submerged territory equally with other portions of the corporate limits. The Mississippi is a navigable stream in fact, though not so at common law, and the jurisdiction of the State of Illinois, for all purposes not delegated to the general government, extends over the territory and waters of such river, to the middle thereof; and when property is found situate within such limits, or crimes and offences are committed within the legal boundaries of the State, whether such territory is covered with water or is dry land, the general laws of the State must be given effect. At the point in question, the city limits coincide with the State boundary, and there can be no question as to the corporate power and jurisdiction of the city within every part of its corporate limits.

This bridge structure, from the point indicated, has its legal *situs* within the corporate limits and jurisdiction of East St. Louis, and is subject to taxation, for corporate purposes, equally with all other property within the corporate limits; and when the city seeks to exercise the power of taxation for corporate purposes, it is essential that "such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same." (Const. 1870, art. 9, sec. 9.) The uniformity required by the constitution would be flagrantly violated if the property of plaintiff in error, within the jurisdiction of East St. Louis, was not required to bear the same burden imposed upon other property within the same jurisdiction. So far as we can see or know, the property of plaintiff in error is asked to bear no greater share of the common corporate burden than other property within the same jurisdiction, of equal value. The purpose of the tax is common, the valuation not excessive or discriminating, the rate uniform, and apparently most perfect uniformity prevails.

But it is said, the property of plaintiff in error thus taxed, has, in years past, received no benefit or protection from the city for the large taxes it has paid, and that, along with the power of taxation, goes the corresponding obligation on the part of the taxing power, to afford protection; that in the last ten years, plaintiff in error paid taxes to the city aggregating $125,000, no part of which was expended in protecting the property of plaintiff in error taxed. Is that a sufficient reason why this tax should be enjoined? Can relief against corporate taxation be predicated upon so illogical a position? Manifestly not. The law has with jealous care placed limitations and checks about the levy and collection of corporate taxes, and the courts may and do, when their power is properly invoked, supervise the exercise of corporate power to the extent of protecting the property owner against an unauthorized exercise of the taxing power; but in respect of the application or use of moneys raised by corporate

authority, discretion is necessarily vested in the corporate authorities, and so long as the fund is not diverted from the purposes for which it was obtained, courts are powerless to interfere. It is no valid objection to a tax levied for corporate purposes upon property subject to such taxation, that the property owner can not see that his property is benefited or protected by the expenditure of the fund, or that it does not, in fact, derive any appreciable benefit therefrom. In *Cary* v. *City of Pekin*, 88 Ill. 154, farm lands within the limits of the city, though used and only available for farming purposes, and deriving no benefit by the improvements for which a municipal tax had been levied, were, it was held, liable for taxes levied for corporate purposes. And it was said, while the lands remain within the corporate limits they are subject to municipal taxation, and however burdensome such taxes may be, the land owner can have no relief against them. So, here, while the bridge remains within the corporate limits of East St. Louis it will be subject to taxation for corporate purposes, uniformly with other property within the same jurisdiction, and this will be so, although it may not be appreciably benefited by the particular municipal purpose or improvement for which the tax may be expended.

The decree of the circuit court dismissing the bill must be affirmed.

*Decree affirmed.*