THE ST. LOUIS BRIDGE COMPANY

*v.*

THE PEOPLE *ex rel.* J. D. Baker, Collector.

*Filed at Mt. Vernon June 16, 1888.*

1.  BOUNDARY—*western boundary of East St. Louis and of St. Clair county.*  The western boundary of St. Clair county and of the city of East St. Louis is identical with the western boundary of the State.

2.  ST. LOUIS BRIDGE—*within what jurisdiction—where taxable.*  All that part of the St. Louis bridge which lies east of the middle thread of the Mississippi river, as it now is, is within the State of Illinois, and being so, is subject to taxation by the State, St. Clair county, and the city of East St. Louis.

3.  MUNICIPAL TAXATION—*for sewerage purposes—and herein, in what consists the establishment of a system of sewerage.*  By statute, the legislative authority of any city which has established a system of sewerage is invested with power annually to levy and collect a sewer tax, not exceeding one mill on the dollar, for the extension of sewers therein, and the maintenance of such sewers, provided the board of public works, if any, or the head of the sewer department of such city, shall first certify to such legislative authority the amount necessary for that purpose.

4.  Where the legislative authority of a city created by special charter has assumed control of the sewerage of the city, and created a department of the city government charged with the location, extension, construction and maintenance of sewers, and has accepted plans and estimates for the extension of the sewerage already under its control, this will be an establishment of a system of sewerage, within the meaning of the statute; and such authority, upon the report of the sewer department of the amount necessary for the purpose of constructing and maintaining the same, will be authorized to levy and collect a sewer tax.

5.  In such case, it is not necessary that the system of sewerage adopted shall extend to all parts of the city.  What sewerage is necessary for the welfare of the city and health of its inhabitants is a political question, and is to be determined by the legislative authority of the city.

APPEAL from the County Court of St. Clair county; the Hon. JOHN B. HAY, Judge, presiding.

Messrs. G. & G. A. KOERNER, for the appellant.

Mr. R. D. W. Holder, and Mr. F. G. Cockrell, for the appellees.

Mr. Justice Shope delivered the opinion of the Court:

This was an application in the county court of St. Clair county, by the collector of taxes of that county, for judgment against lands and lots against which taxes were delinquent for the year A. D. 1886. No objection is made to the return of the delinquent list or notice of application for judgment. Appellant, the St. Louis Bridge Company, appeared, and filed objections to rendering judgment against the portion of their bridge described in the assessor's return and notice of the collector, for the following reasons: First, that the greater part of said structure lies beyond the jurisdiction of the State of Illinois and beyond the State limits, and could not be assessed and taxed by the officers of the State of Illinois; second, the defendant objects to the city tax of East St. Louis, the same being beyond the rate of taxation to which the city is limited, being beyond the rate of ten mills; third, objects to the city tax of East St. Louis for sewerage, that city having established none. The county court overruled the objections, and rendered judgment for the delinquent taxes as shown by the collector's return. The bridge company prosecutes an appeal therefrom to this court, and insists that the objections should have been sustained, and that the judgment is therefore erroneous.

No evidence was offered to sustain the second objection, nor does anything appear in the record showing that the rate of taxation in the city of East St. Louis was greater than the prescribed limit of taxation therein. The principal question, and the one to which the argument of counsel is chiefly directed, arises under the first objection. This involves, as contended, the determination of the western boundary of the State of Illinois at this point.

The western boundary of the county of St. Clair, and of the city of East St. Louis, is identical with the western boundary

of the State. (Charter of East St. Louis, 1 Private Laws of 1869, p. 886; *St. Louis Bridge Co.* v. *City of East St. Louis,* 121 Ill. 238.) The contention, however, is, that about six hundred feet of the bridge belonging to appellant company, being that portion commencing at the middle of the Mississippi river as it now is, and extending east toward the Illinois shore, is not within the territorial limits of Illinois, and therefore not subject to taxation by the State, or by the authorities of said city or county. Evidence was offered, tending to show that in 1818, when Illinois was admitted into the Union, the middle of the Mississippi river was six hundred feet east of the now center thread of that stream, and it is contended that the boundary of the State is the line of the middle of said river as it then existed. This precise question was before this court in the case of *Buttenuth et al.* v. *St. Louis Bridge Co.* 123 Ill. 535, where, after full argument, the question was determined adversely to the contention of the appellant. Upon petition for rehearing in that cause, the opinion again received full consideration, and was adhered to. Every point here made was then fully considered and disposed of, and the determination then reached must be adopted as conclusive upon the question of the boundary of the State and of said city and county.

All of that portion of the bridge structure assessed for taxation in the county of St. Clair and the city of East St. Louis, and as to which the taxes were returned as delinquent, lies east of the middle of the channel of the Mississippi river, and, as held in the case referred to, is liable to taxation in this State, and by said city and county.

The third objection was properly overruled. Section 1 of the act of 1883, (Laws of 1883, p. 68; Starr & Curtis, par. 324, p. 546,) provides: "That the legislative authority of any city which now has, or may hereafter have, established a system of sewerage for such city, shall have power, annually, to levy and collect a tax upon the taxable real and personal property of such city, not to exceed one mill on a dollar, for the extension

and laying of sewers therein, and the maintenance of such sewers, which tax shall be known as 'the sewerage fund tax,' to be levied and collected as other taxes: *Provided, however,* that the board of public works of such city, if any, or the head of the sewer department of such city, shall first certify to such legislative authority the amount that will be necessary for such purpose." In 1885, prior to the levy of the sewerage tax in question, the city council of said city of East St. Louis had adopted an ordinance creating a "city sewer department," to consist of three persons, denominated "Sewer Commissioners of East St. Louis." The first commissioners were named in the ordinance, their organization as a board, and the annual appointment of their successors in office provided for. It was ordained that said commissioners shall have general charge of the location and construction of sewers in said city, and cause surveys and estimates of costs of sewers to be made, in their discretion; and, subject to the approval of the council, to contract for constructing of sewers, and supervise all local assessments made by the council, etc. It is shown, that at the time of the passage of this ordinance there were about three miles of sewer constructed and in use in said city. The commissioners entered upon the discharge of the duty imposed, and afterwards made a report to the city council, which was accepted by the council, of plans and estimates for extending and repairing the sewers of said city, with estimates "of the amount of tax required to extend and repair the sewers of East St. Louis." The amount so reported was, it is shown, put, as an item, in the general appropriation ordinance for the year 1886, and forms the basis for the sewerage fund tax in question. We are of opinion that when the legislative authority of the city assumed control of the sewerage of the city, and created a department of city government charged with the location, extension, construction and maintenance of sewers, and had accepted plans and estimates for the extension of the sewerage already under its control, it had established a system of sewer-

age, within the meaning of the act of the legislature referred to, and was authorized by that act, upon report of the city sewer department of the amount necessary for the purpose of constructing and maintaining the same, to levy and collect a sewerage fund tax.

It is shown that the sewers already constructed extended along Illinois and Division avenues, Fourth and Tenth, *and other streets* in the city, and the plans and estimates reported contemplated extensions and repairs thereof. It is not necessary that the system of sewerage adopted shall extend to all parts of the city. What sewerage is necessary for the welfare of the city and health of its inhabitants, is political, and to be determined by the legislative authority of the city, under its grant of power. It may be, so far as anything appearing in this record, that the proposed extensions and improvement of the sewers will complete a perfect system of sewerage for the entire city.

Finding no error in this record, the judgment of the county court will be affirmed.

*Judgment affirmed.*