(No. 43400.—

SINCLAIR REFINING COMPANY, Appellee, *vs.* THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed April 1, 1971.—Rehearing denied Jan. 27, 1972.*

WILLIAM J. SCOTT, Attorney General, of Springfield, (FRANCIS T. CROWE and SAMUEL E. HIRSCH, Assistant Attorneys General, of counsel,) for appellant.

LORD, BISSELL & BROOK, of Chicago, (WILLIAM H. HILLIER and EDWARD M. GRABILL, JR., of counsel,) for appellee.

Mr. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Sinclair Refining Company (now Atlantic Richfield Company), filed its complaint under the Administrative Review Act (Ill. Rev. Stat. 1969, ch. 110, par. 264 *et seq.*) seeking reversal of the administrative decision of defendant, Department of Revenue, holding plaintiff liable for additional taxes, and penalties, under the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1969, ch. 120, par. 440 *et seq.*) The circuit court of Cook County reversed the decision of the defendant, and defendant appeals

directly to this court because the revenue and constitutional questions are involved. Supreme Court Rule 302(a).

The evidence shows that plaintiff, through a marketer, sells fuel oil to towboats traveling on the Mississippi River. The sales in question were made between Lock 26 near Alton and Lock 27 near Granite City. Lock 27 is the most southerly lock on the Mississippi and large tows traveling north are frequently broken into smaller units, and tows traveling south are tied into larger units in the area between Locks 26 and 27. A great deal of refueling, loading of supplies and changing of crews occurs in this area.

Refueling is frequently done in midstream and the testimony shows that this results in a saving of 4 to 5 hours which would be consumed if it were necessary to take on fuel at shore installations. The towboat captain advises the petroleum marketer by marine radio or mobile phone of his approximate time of arrival and the marketer dispatches a "fuel flat" which is instructed by the towboat captain as to when and where it is to meet the towboat and on which side of the towboat the hoses are to be connected. The fuel oil is delivered by means of flexible hoses extending from the "fuel flat" to the fuel tanks of the towboat. Rate of delivery varies from 5,000 to 30,000 gallons per hour and usually takes an hour from the time the hoses are connected and pumping is commenced.

There was considerable testimony concerning navigation problems between Locks 26 and 27. The course a towboat captain chooses on a particular trip depends upon the conditions of the channel, river traffic, sandbars, wind conditions, river currents, and the number of barges he is towing. Ordinarily, the channel is relatively straight and the fewest navigation problems occur between Lock 26 at Alton and the curve in the river at Wood River. The towboat captains try to stay in the center of the channel and refuel in this area. The center of the main channel of the Mississippi River is the boundary between Illinois and Missouri (*People ex rel.*

*Wangelin* v. *City of St. Louis,* 367 Ill. 57; *St. Louis Bridge Co.* v. *People ex rel. Baker,* 125 Ill. 226; *Buttenuth* v. *St. Louis Bridge Co.,* 123 Ill. 535), but there are no markers in the river to show the center of the main channel. The difficulty encountered in determining whether the fuel oil was delivered in Illinois or Missouri is illustrated by the testimony of Captain Earl Daily who stated, "We do not make any attempt to stay upon one side of the channel or the other for any purpose other than navigation. * * * [I]t could be that due to navigation factors, I usually do favor the Missouri side for navigation factors, but I make no attempt to stay on one side or the other for the purpose of being on one side or other of the State line. * * * I don't know anybody that makes an attempt to stay in one State or another."

This action involves two assessments against plaintiff, one for sales during the period of January, 1961, through March, 1963, and the other for sales from April, 1963, through March, 1964, which with penalties are in the aggregate amount of $56,070.96.

Defendant contends that the sales of fuel oil are subject to the tax imposed by section 2 of the Retailers' Occupation Tax Act (ch. 120, par. 441), and the circuit court erred in reversing defendant's administrative decision.

Plaintiff argues that sales of fuel oil delivered to vessels afloat on navigable waters have always been exempt from the Retailers' Occupation Tax Act. In support of its contention it cites the amendment of section 2 (Laws of 1968, p. 123) which provides, "nor is such tax imposed upon sales of fuel consumed or used in the operation of ships, barges or vessels which are used primarily in or for the transportation of property or the conveyance of persons for hire on rivers bordering on this State if such fuel is delivered by the seller to the purchaser's barge, ship or vessel while it is afloat upon such bordering river," and argues that the amendment "effected no substantive change in the law and

merely was intended to make explicit that which had always been implicit in that law."

Defendant argues that the purpose of the amendment was to remove a competitive disadvantage faced by Illinois petroleum marketers because Missouri does not impose a tax on sales of this type. There is nothing in the record which tends to show the legislative intent behind the amendment.

Under similar circumstances we have stated that "The addition of a new provision in a statute by amendment is an indication of the absence of its implied or prior existence" (*Western National Bank of Cicero* v. *Village of Kildeer,* 19 Ill.2d 342, 354), and that "It must be presumed that in adopting this amendment the legislature intended to make some change in existing law." (*Livingston* v. *Meyers,* 6 Ill.2d 325, 333.) We hold that the 1968 amendment exempting this type of sale from the Retailers' Occupation Tax Act was not merely declarative of the prior existing law but was a change in the existing law.

Plaintiff also argues that the tax assessed is a tax on interstate commerce prohibited by the Federal constitution. (U.S. Const., art. I, sec. 8, cl. 3.) Section 2 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1969, ch. 120, par. 441) provides that the "tax is not imposed upon the privilege of engaging in any business in interstate commerce or otherwise, which business may not, under the constitution and statutes of the United States, be made the subject of taxation by this State * * *."

Section 1 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1969, ch. 120, par. 440) defines a "sale at retail" as "any transfer of the ownership of or title to tangible personal property to a purchaser." Under the Uniform Sales Act (Ill. Rev. Stat. 1961, ch. 121½, par. 19, Rule 5) in effect during the period from January 1, 1961, to June 30, 1962, and under the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 2—401(2)) which governed the

sales from July 1, 1962, through March 31, 1964, transfer of title to the fuel oil occurred at the time it was delivered to the towboats. Thus, where delivery of the fuel oil was on the Missouri side of the main channel of the Mississippi River, the sale was in Missouri; where the delivery was on the Illinois side of the main channel, the sale was in Illinois.

As to the tax measured by the sale of fuel oil in Illinois, we hold that it does not contravene the commerce clause of the Federal constitution. *Eastern Air Transport, Inc.* v. *South Carolina Tax Com.*, 285 U.S. 147, 76 L. Ed. 673, 52 S. Ct. 340, involved a tax on the privilege of carrying on the business of selling gasoline within the State. Eastern sought to restrain the collection of the tax of 6 cents per gallon with respect to gasoline purchased by it in South Carolina and used in interstate commerce. In sustaining the imposition of the tax, the Supreme Court stated: "Undoubtedly, purchases of goods within a State may form part of transactions in interstate commerce and hence be entitled to enjoy a corresponding immunity. But the mere purchase of supplies or equipment for use in conducting a business which constitutes interstate commerce is not so identified with that commerce as to make the sale immune from a nondiscriminatory tax imposed by the State upon intrastate dealers. There is no substantial distinction between the sale of gasoline that is used in an airplane in interstate transportation and the sale of coal for the locomotives of an interstate carrier, or of the locomotives and cars themselves bought as equipment for interstate transportation. A nondiscriminatory tax upon local sales in such cases has never been regarded as imposing a direct burden upon interstate commerce * * *." 285 U.S. 147, 152, 76 L. Ed. 673, 675, 52 S. Ct. 340, 341; see also *State Tax Com. of Utah* v. *Pacific States Cast Iron Pipe Co.*, 372 U.S. 605, 10 L. Ed. 2d 8, 83 S. Ct. 925; *International Harvester Co.* v. *Department of Treasury of Indiana*, 322 U.S. 340, 88 L. Ed. 1313, 64 S. Ct. 1019; *McGoldrick* v. *Berwind-*

*White Coal Mining Co.,* 309 U.S. 33, 84 L. Ed. 565, 60 S. Ct. 388.

As to the tax measured by the sale of fuel oil in Missouri, we hold it does violate the commerce clause of the Federal constitution. *McLeod* v. *J. E. Dilworth Co.,* 322 U.S. 327, 88 L. Ed. 1304, 64 S. Ct. 1023.

As above stated, the problem in this case is that of determining in which State the sale of fuel oil occurred. Neither party argues that all of the sales took place in one State or the other. Defendant contends that the introduction of the corrected return is *prima facie* proof of its correctness (see Ill. Rev. Stat. 1969, ch. 120, par. 443), and because plaintiff cannot prove the amount of sales that occurred in Missouri, it has not overcome the *prima facie* case that all the midstream sales are taxable. Plaintiff, relying upon *Goldfarb* v. *Department of Revenue,* 411 Ill. 573; *Fillichio* v. *Department of Revenue,* 15 Ill.2d 327; *Miller* v. *Department of Revenue,* 408 Ill. 574; and *Novicki* v. *Department of Finance,* 373 Ill. 342, argues that its proof that all the midstream sales did not occur in Illinois, overcame the *prima facie* proof of the correctness of the corrected return and defendant then had the burden of proving which sales occurred in Illinois and are taxable.

The cases cited by plaintiff are clearly distinguishable from the case here considered. In *Goldfarb, Miller* and *Novicki,* the taxpayer offered records of gross receipts from sales and offered testimony which explained why they were less than sums the Department contended were received and the court held the evidence was sufficient to overcome the *prima facie* case made by the proposed assessment. In *Fillichio,* evidence of a similar nature, but unsupported by adequate records, was held to be insufficient to shift the burden to the Department of Revenue. Those cases presented issues which lent themselves to mathematical resolution, dependent upon whether the finder of fact accepted the Department's

argument with respect to a "mark up" applied to the tax-payer's purchases, or the taxpayer's explanation of why his gross receipts were less than the amount claimed by the Department.

As we have indicated, it is impossible to determine with any degree of certainty the amount of fuel oil that was sold in Illinois or the amount that was sold in Missouri. This uncertainty was not caused by any action or inaction of plaintiff or its marketer but is the result of a moving delivery in an area where the State boundary cannot be readily identified with certainty. To hold that plaintiff must prove the amount sold in Missouri before it can claim any exemption would be to deny it all exemption, and yet it is certain that a part of the sales were exempt.

In our opinion this case is similar to *Cohan v. Commissioner of Internal Revenue* (2d cir.), 39 F.2d 540. In that case, George M. Cohan claimed expenditures of substantial sums for travel and entertainment but had no records to support his contentions. The Board of Tax Appeals refused to allow any part of the deductions claimed on the ground that it was impossible to tell how much he had in fact spent. In remanding the case, "to make some allowance for the expenses of travel and the like," the Court of Appeals, at page 543, said: "Absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. But to allow nothing at all appears to us inconsistent with saying that something was spent. True, we do not know how many trips Cohan made, nor how large his entertainments were; yet there was obviously some basis for computation, if necessary by drawing upon the Board's personal estimates of the minimum of such expenses. The amount may be trivial and unsatisfactory, but there was basis for some allowance, and it was wrong to refuse any,

even though it were the traveling expenses of a single trip. It is not fatal that the result will inevitably be speculative; many important decisions must be such."

This case is not one for the imposition of "Draconian Absolutes" (see *Webb* v. *Commissioner of Internal Revenue* (5th cir.), 394 F.2d 366, 373), and although the result may to some extent be speculative, the Department of Revenue, finding guidance in *Cohan,* can make a determination of the factual issue presented, and the case should be remanded for that purpose.

Plaintiff's final argument is that defendant is barred from assessing a tax deficiency for the period prior to January 31, 1963, because in May of 1963 it made·an audit of plaintiff's records through January, 1963, and made an assessment which plaintiff paid. It contends that the legislative intent of section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1969, ch. 120, par. 443), which deals with the examination and correction of tax returns, is that defendant cannot again examine or correct a return after it has once done so. We do not reach this question because it was plaintiff who initially sought to correct its tax returns covering the period prior to January 31, 1963, by filing a claim for refund.

The judgment of the circuit court of Cook County is reversed and the cause is remanded, with directions to vacate the judgment and remand the cause for further proceedings not inconsistent with this opinion.

*Reversed and remanded,*
*with directions.*