2019 IL App (1st) 172663

FIRST DISTRICT
May 13, 2019

| | | |
|---|---|---|
| FORD MOTOR CO. & AFFILIATES, | ) | Appeal from the Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Nos. 16 L 50430 & 16 L 50498 |
| | ) | (cons.) |
| | ) | |
| | ) | |
| THE DEPARTMENT OF REVENUE, | ) | Honorable James M. McGing, |
| | ) | Judge presiding. |
| Defendant-Appellee. | ) | |

JUSTICE GRIFFIN delivered the judgment of the court, with opinion.
Justices Pierce and Walker concurred in the judgment and opinion.

## OPINION

¶ 1    In 2004, plaintiff Ford Motor Co. & Affiliates amended its tax returns for taxable years 1992 and 1994-2000 to reflect what it claimed were nonbusiness income deductions based on interest income it earned as a partner in three investment accounts. The Department of Revenue (Department) audited the amended tax returns and issued a notice of denial (denying the claimed deductions) and two notices of deficiency (proposing to assess additional tax liabilities). Plaintiff timely filed a protest and the matter proceeded to an administrative hearing.

¶ 2    After an evidentiary hearing, the administrative law judge recommended that the director of the Department (Director) finalize the notice of denial and notices of deficiency as issued. It concluded that plaintiff failed to present competent evidence supported by its books and records that it was entitled to the nonbusiness interest deductions claimed in its amended tax returns. The

Director accepted the recommendation. The circuit court on administrative review confirmed the Director's decision. Plaintiff appeals, and we affirm the circuit court's judgment and confirm the Director's decision.

¶ 3                                    BACKGROUND

¶ 4     Though plaintiff is a nonresident corporation and foreign to Illinois, it operates its business in Illinois and earns income here. Therefore, plaintiff must pay Illinois incomes taxes.

¶ 5                          A. Illinois Income and Replacement Taxes.

¶ 6     Section 201(a) of the Illinois Income Tax Act (35 ILCS 5/201(a) (West 2016)) imposes upon every corporation a tax, measured by net income, on the privilege of earning or receiving income in Illinois. Section 201(c) of the Income Tax Act imposes an additional personal property replacement tax, measured by net income, upon every corporation based upon the same privilege. *Id.* § 201(c). Net income is defined as that portion of the taxpayer's base income that is allocable to Illinois, subtracted by the standard exemption (*id.* § 204) and allowable deductions (*id.* § 207). *Id.* § 202.

¶ 7     When a nonresident corporation earns income in Illinois and other states throughout the country, as plaintiff does here, the question is how much of that income is subject to Illinois income taxes. Section 304(a) of the Income Tax Act contains an apportionment formula that Illinois uses to identify that portion of a nonresident corporation's business income that is attributable to its business operations in Illinois and, thus, taxable. *Id.* § 304(a). Business income is defined as all income that is properly apportionable under the United States Constitution. *Id.* § 1501(a)(1).

¶ 8 Pertinent here, nonbusiness income is all income other than business income (or compensation). *Id.* § 1501(a)(13). It does not factor into the Illinois apportionment formula and is deducted from the amount of a taxpayer's base income allocable to Illinois.

¶ 9 B. Plaintiff's Amended Tax Returns

¶ 10 In 2004, plaintiff amended its tax returns for 1992 and 1994-2000 to reflect purported nonbusiness income deductions it failed to deduct from its original tax returns for 1994-96 and 1998-2000. Amendments to the 1992 and 1997 returns were the result of losses created by the claimed deductions that plaintiff carried back to those years. If correct, the claimed deductions resulted in a refund of $9,716,452.

¶ 11 The source of plaintiff's claimed deductions was three investment accounts opened at State Street Bank (State Street Accounts) that allegedly earned nonbusiness interest income during the taxable years in question. Plaintiff was one of three partners in the accounts and used them to manage cash flow, improve its balance sheet, and support day-to-day automotive operations.

¶ 12 The Department audited plaintiff's amended tax returns and, on April 26, 2010, issued a notice of denial denying its claim for a refund (Notice of Denial) and two notices of deficiency (Notices of Deficiency) proposing to assess additional tax owed for 1997 and 1999 in the amounts of $609,950.42 and $852,067.42, respectively.

¶ 13 Plaintiff timely protested the Notice of Denial and Notices of Deficiency. The matter proceeded to an administrative hearing.

¶ 14 C. The Administrative Hearing

¶ 15 At the evidentiary hearing, the Notice of Denial and Notices of Deficiency were introduced into evidence by way of the parties' stipulation. Plaintiff's business records were also

admitted into evidence by way of stipulation. Three witnesses testified: Dennis Tosh, Meredith Alexander, and Bernard Pump.

¶ 16    At the time of his testimony, Dennis Tosh served as plaintiff's director of global trading. He explained that during the 1990s plaintiff had more cash than it believed necessary to run the daily operations of its automotive business. As a result, a plan was devised to invest a portion of the excess cash in securities to earn interest income. Tosh was involved in the decision to create State Street Accounts and managed them.

¶ 17    He testified that plaintiff used the State Street Accounts to purchase and sell securities. The securities in those accounts included the following: "U.S. Treasury bills, U.S. Treasury notes, some municipal notes, some federal agency note[s], such as short-term issued by organizations such as Fannie Mae, Freddie Mac, the Home Loan Bank and so forth, high quality investment grade corporate commercial paper."

¶ 18    One of the State Street Accounts, referred to as TI51 (or Ford Enhanced Partnership), "absorbed all of the day-to-day changes in cash that result from running a global automotive company." Tosh explained that if there was a net positive for the day, cash would be transferred into a State Street Account and invested in securities. Conversely, a net negative for the day would result in the liquidation of securities in TI51 to cover expenses.

¶ 19    Each of the State Street Accounts held securities with different terms of maturity. TI51 contained short-term investments with "maturities well inside six months." The other investment accounts, TI41 (or Ford Investment Partnership) and TI81 (or Ford Super Enhanced Return Partnership), had maturities that were "about one year" and "about two years," respectively. The accounts operated "like an in-house mutual fund."

¶ 20    Tosh "was responsible for leading the team that made the individual investment decisions" and received a "daily report" prepared by his staff "during that time period" that showed daily balances in each of the accounts and the breakdown of cash held in the accounts by partner. There were three partners in the State Street Accounts and Tosh recalled that two of them were Ford International Capital Corporation and the Ford Motor Company Fund, a not-for-profit corporation. He estimated that plaintiff's share "of the invested cash" was between "80 and 95 percent."

¶ 21    Meredith Alexander testified on behalf of plaintiff as one of plaintiff's senior audit analysts. She was hired by plaintiff in 2008 and sometime during that year was tasked to "gather the documents in regards to the calculation of whether the interest [income from the State Street Accounts] was unitary or non-unitary" (taxable or nontaxable).

¶ 22    She gathered information ("monthly cash balances, interest for the federal return along with detail for that interest") from plaintiff's computer networks and physical files, and factored that information into what she referred to as the AHP calculation (AHP Calculation).[1] Alexander explained that she included the results of the AHP Calculation, and all the information she factored into it, on a spreadsheet (Spreadsheet). She created the Spreadsheet in 2008 and updated it in 2011.

¶ 23    When plaintiff attempted to introduce the Spreadsheet into evidence, the Department objected. It argued that plaintiff failed to (1) show the Spreadsheet was "relevant to this case; *i.e.*,

---

[1]This calculation was accepted by a New Jersey tax court in 1990 as a way to distinguish business income from nonbusiness income. See *American Home Products Corp. v. Director*, *Division of Taxation*, 11 N.J. Tax 287, 306 (N.J. Tax Ct. 1990) (allowing taxpayer to calculate "the taxable portion of its short-term investment portfolio and the income therefrom by ascertaining the difference between the average weekly balance and the lowest weekly balance and then determining the percentage relationship between the difference and the average weekly balance"). No finding as to the efficacy or applicability of the AHP Calculation was made by the Director.

failed to show how these numbers tie to the amended returns filed in this case. In fact, they don't," and (2) establish that the Spreadsheet "was made on or near the time that the amended returns were filed in this case, which was 2004."

¶ 24 Plaintiff responded as follows: "[i]t's not our position that the spreadsheet supports the amended returns. In fact, it doesn't *** [w]hen we're done with this hearing and you rule in our favor, at that point, we'll have to determine what the actual numbers are, and that's set out in this document."

¶ 25 The administrative law judge (ALJ) asked plaintiff what the Spreadsheet purported to show if the numbers could not be "tied to the amended return." Plaintiff responded that the Spreadsheet was a "business record that was created by Ford, Ms. Alexander, to support the AHP calculation ***. It was never intended to support *** the numbers on the amended return."

¶ 26 When the ALJ asked whether the amount of nonbusiness interest income indicated on the Spreadsheet was "less than or greater than the amount sought to be refunded on the amended return," plaintiff replied, "[i]t's actually more conservative and less than." The ALJ reserved its ruling on the admissibility of the Spreadsheet as a business record. Alexander continued to testify.

¶ 27 Alexander admitted the Spreadsheet did not contain the actual amount of "interest earned on the cash investment" in the State Street Accounts because she "had not located those records." She also did not have the partnership agreements for the States Street Accounts. As a result, she was unable to determine each partner's representative share of cash in those accounts during the taxable years in question. When asked by the ALJ, "[w]here on this [Spreadsheet] could I find the amount of income earned by account 51," Alexander replied, "[i]t is not on the [Spreadsheet]."

¶ 28    Bernard Pump, a valuation and damages expert, testified on behalf of plaintiff. He was engaged to answer the question of "whether the use of the American Home Products method of determining allocable income was appropriate for Ford, in this instance; and whether the calculation, itself, was accurate and reliable." Pump explained how the AHP Calculation functioned and then discussed his assessment of the Spreadsheet.

¶ 29    He concluded that (1) from an economic perspective, it was reasonable to use the AHP Calculation to calculate plaintiff's nonbusiness interest income for the taxable years in question and that plaintiff appropriately applied the calculation in this case and (2) plaintiff's calculation reflected in the Spreadsheet was "an appropriate application" of the AHP Calculation.

¶ 30    Pump affirmed that the "total" indicated on the Spreadsheet was plaintiff's "best estimate" of the aggregate taxable amount of interest earned by all of the State Street Accounts during a particular year.

¶ 31    After reasoned consideration, the ALJ declined to admit the Spreadsheet into evidence as "reflecting a true and accurate statement of the amount of interest income from each of the accounts" because Alexander created it after plaintiff amended its tax returns and in anticipation of litigation.

¶ 32                    D. The Administrative Recommendation

¶ 33    The ALJ wrote a 57-page decision recommending that the Director finalize the Notice of Denial and Notices of Deficiency as issued. The ALJ found that

"regardless of whether one agrees with the manner or method Ford used in the bottom part of Alexander's spreadsheet, mathematically, the percentages it arrived at must be applied to a known quantity. But Ford does not know the value of any such quantity. It does not know how much interest income any of the [State Street Accounts] realized, for

7

any of the years at issue, because it has no books and records which identify such amounts."

The "best it could do was to make a rough estimate of such amounts."

¶ 34    The ALJ concluded that plaintiff failed to satisfy its burden of proving with competent evidence supported by its books and records "it was entitled to the nonbusiness income deductions reported on its original return for [taxable year] 1997, and on its 2004 amended returns for the other tax years at issue."

¶ 35                    E. The Decisions of the Director and Circuit Court.

¶ 36    The Director accepted the ALJ's recommendation and finalized the Notice of Denial and the Notices of Deficiency as issued. The circuit court affirmed the Director's decision on administrative review after concluding that its factual findings and conclusions were not against the manifest weight of the evidence.

¶ 37                                JURISDICTION

¶ 38    On September 5, 2017, the circuit court entered an order affirming the Director's decision. On November 17, 2017, this court granted plaintiff's motion for leave to file a late notice of appeal pursuant to Illinois Supreme Court Rule 303(d) (eff. July 1, 2017), which allows a reviewing court to grant leave to appeal upon showing a reasonable excuse for its failure to timely file a notice of appeal. Plaintiff filed its notice of appeal on November 21, 2017. Accordingly, jurisdiction is proper in this case. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994).

¶ 39                                 ANALYSIS

¶ 40    Section 1201 of the Income Tax Act (35 ILCS 5/1201 (West 2016)) provides that judicial review of the Director's decision is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)). In cases arising under the Administrative Review Law (*id.*), we review

8

the decision of the administrative agency, not the determination of the circuit court, and the scope of our review extends to all questions of law and fact provided by the record. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009); 735 ILCS 5/3-110 (West 2016). We are, however, limited by the established standards of review.

¶ 41    The applicable standard of review in this case depends on whether the question presented is one of law, one of fact, or a mixed question of law and fact. *Engle v. Department of Financial & Professional Regulation*, 2018 IL App (1st) 162602, ¶ 29. Questions of law are reviewed *de novo*. *Chak Fai Hau v. Department of Revenue*, 2019 IL App (1st) 172588, ¶ 33.

¶ 42    An administrative agency's findings and conclusions on fact questions are *prima facie* true and correct (735 ILCS 5/3-110 (West 2016)), and we are not to reweigh the evidence or substitute our judgment for that of the Director. *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005). A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Hollinger International, Inc. v. Bower*, 363 Ill. App. 3d 313, 315 (2005).

¶ 43    A mixed question of law and fact is one where the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard. *Exelon Corp.*, 234 Ill. 2d at 273. We review such a question for clear error. *Id.* A decision is not clearly erroneous unless the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.*

¶ 44    This case does not present a legal question. The Director found that plaintiff failed to rebut the Department's *prima facie* case because its books and records failed to establish, as a threshold matter, the amount of interest income it earned as a partner in the State Street Accounts

necessary to demonstrate that the nonbusiness income deductions reflected in its amended tax returns was correct. An entity that claims a nonbusiness income deduction bears the burden of showing that the identified income is, in fact, nonbusiness income. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 268 (1998) ("[a]n entity claiming that its income is nonbusiness income bears the burden of clearly proving this fact"). Whether this case presents a question of fact or a mixed question of law and fact is of no consequence because Director's decision withstands scrutiny under either standard of review.

¶ 45    Section 904(a) of the Income Tax Act provides that the findings of the Department evidenced by a notice of deficiency are *prima facie* correct and constitute *prima facie* evidence of the correctness of the amount of tax and penalties due. 35 ILCS 5/904(a) (West 2016). The burden of proving entitlement to a deduction is on the taxpayer. *Bodine Electric Co. v. Allphin*, 81 Ill. 2d 502, 513 (1980) (burden of proof is on the taxpayer to show he is entitled to the deduction claimed). Plaintiff, as the taxpayer here, was required to rebut the Department's *prima facie* case in order prevail on its protest.

¶ 46    In order to rebut the Department's *prima facie* case, plaintiff was required present competent evidence supported by its books and records showing that the Department's assessments were incorrect. *Estate of Graham v. Department of Revenue*, 162 Ill. App. 3d 754, 758-59 (1987) ("[o]nce the Department establishes its *prima facie* case, the burden is on the taxpayer to overcome this presumption of validity by producing competent evidence, identified by the taxpayer's books and records, to show that the Department's returns are incorrect").

¶ 47    One would presume that rebutting the Department's case would not be difficult given that all taxpayers, including plaintiff here, have a duty to keep accurate books and records. 35 ILCS 5/501(a) (West 2016) (every person liable for any tax imposed by the Income Tax Act shall keep

10

such records and comply with rules and regulations prescribed by the Department); 86 Ill. Adm. Code 100.9530(a)(1) (2000) ("[e]very person liable for any tax imposed by the IITA shall keep books and records sufficient to substantiate all information reported on any income tax"); 86 Ill. Adm. Code 100.9530(b)(1) (2000) (taxpayer must at a minimum maintain records that "enable the Department to ascertain whether the liability for tax is incurred and, if so, the amount of the liability").

¶ 48    In this case, the *correct* amount of interest income plaintiff earned as a partner in the State Street Accounts was an evidentiary prerequisite, under any apportionment methodology, necessary to rebut the Department's *prima facie* case. That amount was absent from plaintiff's books and records presented at the administrative hearing. The testimony of plaintiff's witnesses and the record confirm the absence.

¶ 49    Alexander testified at the administrative hearing that she looked for records from the State Street Bank identifying the interest income earned on the State Street Accounts but was unable to locate them. As a result, she *estimated* the amount of interest income that was realized by the State Street Accounts.

¶ 50    But, given that she did not know the amounts of cash each of the three partners invested in those accounts, her estimate of the interest income generated by the State Street Accounts *was not* an estimate of the interest income plaintiff earned during the taxable years in question.

¶ 51    Plaintiff's expert witness, Pump, testified that "we knew that we didn't have all the cash accounts available to us, or at least record of them." He agreed with the ALJ that the row titled "total" on the spreadsheet he attached to his expert report was plaintiff's "best estimate of the aggregate amount [of] interest derived by all of the State Street accounts."

11

¶ 52    As the Department argues here, "plaintiff sought a ruling on the propriety of using the AHP Calculation and believed it that it would submit evidence establishing the correct amount of interest income after the hearing" ("[w]hen we're done with this hearing and you rule in our favor, at that point, we'll have to determine what the actual numbers are, and that's set out in this document"). This position was plainly incorrect.

¶ 53    Plaintiff protested the Department's issuance of the Notice of Denial and the Notices of Deficiency and initiated the administrative proceeding. It was at that proceeding, not after, that plaintiff was required to present its books and records and prove the Department's assessments were incorrect to prevail. This is resoundingly clear and obvious.

¶ 54    The record shows that plaintiff *estimated* the total amount of interest income realized by the State Street Accounts and factored that amount into the AHP Calculation only to arrive at another estimation of the nonbusiness interest income earned by all the State Street Accounts for the taxable years in question. The final estimation was not based upon the amount of interest income plaintiff earned as one of three partners in the State Street Accounts and did not match the amount of deductions claimed in its amended tax returns.

¶ 55    To satisfy its burden in this case, plaintiff was required to show with competent and credible evidence, not only that the AHP Calculation was an acceptable way of establishing business versus nonbusiness income, but that the calculation *established* that the claimed nonbusiness interest income deductions reflected in the amended tax returns for the taxable years at issue were accurate as based on the actual interest income earned by plaintiff as one of three partners in the State Street Accounts.

¶ 56    The Director found that plaintiff failed to establish with its books and records the threshold amount of interest income earned by plaintiff as one of three partners in the State Street

Accounts necessary to rebut the *prima facie* correctness of the Department's assessments reflected in the Notice of Denial and Notices of Deficiency. We answer in the negative both questions of whether the Director's finding was against the manifest weight of the evidence and whether, based on that finding, the Director's conclusion that plaintiff failed to satisfy the applicable legal standard of proof was clearly erroneous.

¶ 57    Plaintiff argues that it was entitled to make "as close an approximation as it could" and that its approximation here rebutted the Department's *prima facie* case. This argument fails.

¶ 58    To support its argument, plaintiff relies on *Sinclair Refining Co. v. Department of Revenue*, 50 Ill. 2d 201 (1971), which involved a taxpayer that sold fuel oil to towboats traveling on the Mississippi River. Given that the sale of oil occurred in an area where the state boundary could not be "readily identified with certainty," the court found that it was "impossible to determine with any degree of certainty the amount of [the taxpayer's] fuel oil that was sold in Illinois or the amount that was sold in Missouri." *Id.* at 208.

¶ 59    Plaintiff also equates its situation to that reflected in *Cohan v. Commissioner*, 39 F.2d 540, 543-44 (2d Cir. 1930), *superseded by statute*, Internal Revenue Code, Pub. L. No. 87-834, § 4(a)(1), 76 Stat. 974, where the taxpayer was not required to substantiate with its books and records a claimed travel and entertainment tax because "absolute certainty in such matters is usually impossible."

¶ 60    The amount of interest income plaintiff earned as a partner in the State Street Accounts during the taxable years in question was not impossible to determine or incapable of accurate mathematical resolution. Plaintiff's witness, Tosh, testified that he received a "daily report" prepared by his staff during the relevant time period that showed daily balances in each of the

accounts and the breakdown of cash held in the accounts by partner. The cases upon which plaintiff relies bear no resemblance to its own and its argument is meritless.

¶ 61    We leave standing the Director's decision that plaintiff failed to establish with competent evidence supported by its books and records the amount of interest income earned as a partner in the State Street Accounts necessary to prove its entitlement to the nonbusiness interest deductions claimed on its amended tax returns.

¶ 62                                   CONCLUSION

¶ 63    Accordingly, we affirm.

¶ 64    Circuit court judgment affirmed; Department of Revenue determination confirmed.