LAKELAND CONSTRUCTION CO., INC., Plaintiff-Appellant, *v.* THE DEPARTMENT OF REVENUE OF THE STATE OF ILLINOIS, Defendant-Appellee.

Second District   No. 77-75

Opinion filed August 8, 1978.

James A. Campion, of Joslyn & Green, of Woodstock, for appellant.

William J. Scott, Attorney General, of Chicago (Patricia Rosen and Paul J. Bargiel, Assistant Attorneys General, of counsel), for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Lakeland Construction Company, Inc., appeals from an adverse judgment upon judicial review of an assessment under the provisions of the Motor Fuel Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 417). The taxpayer contends that it should have been permitted to estimate the portion of its motor fuel which was used in nonhighway vehicles and therefore nontaxable since the Department admitted that some amount was so used; and that the hearing officer at the administration hearing, acting in the dual capacity of a hearing officer and the Department's advocate, deprived the taxpayer of a fair hearing.

In dispute is the use made of 142,458 gallons of diesel fuel purchased from McHenry Oil Company during certain months of the years 1969 through 1972 and delivered to underground tanks at two of Lakeland's gravel pit locations. It further appeared that McHenry Sand and Gravel, Inc., a company owned basically by the same people as Lakeland also had diesel fuel delivered to the underground tanks at both pits but that this was the subject of a separate audit. Also, another related company, Waukegan Excavating, occasionally used the facilities. The Department taxed all of the fuel on the basis that Lakeland had furnished no records

which would prove the amounts claimed to be exempted. The resulting tax was $10,550.87.

The Department's auditor testified that she had no way to determine when she made the original audit whether any of the fuel was used in nonroad vehicles. She admitted that it was "quite possible" that some of the disputed fuel was used in construction equipment and that a substantial amount of fuel was used in these nonroad vehicles. However, it also appears from the record that other fuel deliveries which were not involved in this audit were made to various construction sites.

The taxpayer admittedly kept records as to the usage of the disputed 142,458 gallons but Allen Miller, an officer of Lakeland, testified that he "destroyed all of them just prior to [the Department's auditor] arriving," and had "no actual figures for the usage." The audit period included the years 1969 through 1972 and the witness explained that the records were destroyed along with tally sheets which the company had accumulated for years but which became a storage problem. Miller testified that the nonhighway equipment fluctuated between 55-65 vehicles. He said that the taxable portion of the fuel in question was used only by Lakeland's two road trucks. The witness estimated the amount of hours that two drivers, whom he said solely drove the two road trucks, worked during the audit period. He said his projection was not based on records kept by the drivers for the tax liability period, admitting that "we didn't keep records like this during that period." But from the amount of the drivers' hours he estimated the amount of times the trucks would have been driven from place to place. He said that prior to the hearing he had conducted a test using similar road vehicles and had found that they burned 4.55 gallons per hour. He multiplied the average gallons by the estimated driving time, applied the applicable tax rate and reached a conclusion $3650.33 were owed in motor fuel tax.

Miller admitted that other companies with which Lakeland was connected and for whom he was also an officer used facilities at the two tank sites which he referred to as the Possum Pit and the West Pit. He said that only the two Lakeland road vehicles fueled out of the West Pit. While other road vehicles of the related companies were admittedly fueled out of the Possum Pit, he said that these "were generally" billed to McHenry Sand and Gravel Company and were covered in a separate audit. The Department's auditor testified, based upon her observation and information, that there were a total of 21 road vehicles which used the West Pit and the Possum Pit during the audit period, including the two trucks which the taxpayer claimed were the only road vehicles used by Lakeland.

At the close of the hearing the hearing officer issued the final assessment; the taxpayer appealed to the circuit court which sustained

and confirmed the Department's assessments and entered the judgment which the taxpayer now seeks to review.

■■ The amount of tax fixed by the Department "according to its best judgment and information," under section 5b of the Motor Fuel Tax Act is deemed "prima facie correct" (Ill. Rev. Stat. 1977, ch. 120, par. 421b). Thereupon the taxpayer has the burden of proving by competent evidence that the proposed assessment is not correct; and when the evidence presented by the taxpayer is not so inconsistent or improbable in itself as to be unworthy of belief, the burden shifts to the Department to prove its case by a preponderance of the evidence. *Fillichio v. Department of Revenue*, 15 Ill. 2d 327, 333 (1958).

■■ The taxpayer contends that the hearing officer should have considered its projection of fuel which would be used by two road vehicles as competent evidence which overcame the prima facie case made by the Department and thereupon should have found that the Department failed to prove its case by a preponderance of the evidence. We cannot agree that the prima facie case has been overcome on this record and we therefore affirm.

■■ Under section 12 of the Motor Fuel Tax Act it is the "duty" of a bulk user such as this taxpayer to keep "records and books showing all purchases, receipts, losses through any cause, sales, distribution and use of motor fuel * * *." (Ill. Rev. Stat. 1977, ch. 120, par. 428.) The duty to keep records has been held to be a mandatory one and the failure to keep or produce records for tax purposes will permit a negative inference against the taxpayer, that if the records had been produced they would have reflected unfavorably upon him. (*Copilevitz v. Department of Revenue*, 41 Ill. 2d 154, 157 (1968).) The taxpayer contends that the failure to comply with the statutory record keeping requirements does not preclude it from overcoming the Department's prima facie case with other competent evidence, citing *Goldfarb v. Department of Revenue*, 411 Ill. 573 (1952), for authority. We do not disagree with the general proposition but find it inapplicable here. In *Goldfarb*, the court merely found that there was no support for the Department's contention that the taxpayer failed to keep an annual inventory as required by the statute and that the Department did not question the sufficiency of the taxpayer's records but ignored them (*Goldfarb v. Department of Revenue*, 411 Ill. 573, 580-81 (1952)). Here, Miller admitted that he intentionally destroyed the available records and it is clear that there was not even substantial compliance with the statute.

The taxpayer has also argued that since it was admitted that some diesel fuel was used in nonhighway equipment it was therefore improper for the Department to deny all credit because of the uncertainty as to the amount. Reliance is placed on *Sinclair Refining Co. v. Department of*

*Revenue*, 50 Ill. 2d 201 (1971), and the Federal case cited in that opinion, *Cohan v. Commissioner of Internal Revenue*, 39 F. 2d 540 (2d Cir. 1930). But in *Sinclair* the fuel oil in question was delivered to boats on the Mississippi river and it was impossible to determine with any degree of certainty the amount that was sold in Illinois compared to the amount sold in Missouri. And as the Illinois Supreme Court stated, "[t]his uncertainty was not caused by any action or inaction of plaintiff * * *" (50 Ill. 2d 201, 208). Also in *Sinclair* the court noted the similarity to the *Cohan* case in which the entertainer George M. Cohan claimed expenditures of substantial sums for travel and entertainment but had no records to support his contention. The Federal court noted that absolute certainty as to entertainment expenses is usually impossible because of the nature of the theatrical business. It should also be noted that the *Sinclair* opinion continues, " the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." 50 Ill. 2d 201, 208; 39 F. 2d 540, 543.

The taxpayer in this case not only could have kept proper records, it did so, yet destroyed them just prior to the auditor's arrival. In fact the taxpayer not only destroyed the older records which might have alleviated his storage problem but he also destroyed the more recent records including those thru September of 1972. In addition, the auditor who testified on behalf of the Department did not admit that any of the diesel fuel was used in nonhighway equipment; she only stated that it was possible and that she had no way of knowing. The only testimony to support the taxpayer's theory is that of Allen Miller who himself destroyed the records. Therefore his testimony, in our view, is not sufficient to overcome the prima facie case made by the Department.

Lakeland has also contended that it was deprived of its constitutional right to a fair and impartial hearing on the merits of the case. In stating that the hearing before an administrative agency should not be a partisan hearing with the agency on one side arrayed against the individual on the other, the taxpayer, of course, correctly states the law. (*Fleming v. Illinois Commerce Com.*, 388 Ill. 138, 147 (1944); *Gigger v. Board of Fire & Police Commissioners*, 23 Ill. App. 2d 433, 438 (1959)). A fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses and the right to impartiality in rulings upon the evidence; and these rights may not be unduly limited. (*Gigger v. Board of Fire & Police Commissioners*, 23 Ill. App. 3d 433, 437-39 (1959).) Due process is served when there is an "opportunity to be heard and to defend in an orderly proceeding *adapted to the nature of the case*." (Emphasis added.) *Durkin v. Hey*, 376 Ill. 292, 300 (1941).

■■ Lakeland's attorney objected at the hearing to the hearing officer acting both in that capacity and as a "prosecutor"; however, essentially

the taxpayer argues here that it is not the dual capacity which provides the lack of due process in its view but rather the partiality shown by the hearing officer in conducting the hearing. From our examination of the record before the administrative body we conclude, however, that there was an orderly hearing in which the taxpayer's opportunity to be heard and to defend was not unfairly restricted. This case is clearly distinguishable on its facts from the kind of hearing offered and criticized in *Gigger*. The mere fact that the hearing officer acted as the representative of the Department does not in itself constitute a constitutional deprivation of due process particularly since the finding of the Department's representative can be no more than a recommendation and does not amount to a finding until it is passed upon by the director of the department or the court judicially reviewing the case See *Murphy v. Cuesta, Rey & Co.*, 381 Ill. 162, 166-67 (1942). See also *Withrow v. Larkin*, 421 U.S. 35, 57-58, 43 L. Ed. 2d 712, 729, 95 S. Ct. 1456, 1469-70 (1975).

The judgment is affirmed.

Affirmed.

RECHENMACHER and BOYLE, JJ., concur.