NAZARENO VITALE, d/b/a Joe's Pizza, Plaintiff-Appellant, *v.* THE ILLINOIS DEPARTMENT OF REVENUE, Defendant-Appellee.

Third District   No. 82—837

Opinion filed September 23, 1983.

. Patrick B. Mathis, of John J. Vassen, P.C., of Belleville, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Edward M. Kay, Assistant Attorney General, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This appeal comes from an order of the Illinois Department of Revenue assessing a sales tax deficiency against Nazareno Vitale, doing business as Joe's Pizza, in Aledo, Illinois. Also assessed was a fraud penalty for intentionally falsifying information on the sales tax returns. The decision of the Department of Revenue was upheld by the circuit court of Mercer County on administrative review.

The books and records of the plaintiff, Nazareno Vitale, were inadequate and insufficient for the Department of Revenue to verify the sales tax liability of Mr. Vitale incurred in the operation of Joe's Pizza. Therefore, the Department of Revenue auditor, Gary Armel, used certain assumptions to calculate the tax liability for the years 1976, 1977 and 1978. First, Mr. Vitale's books and records did not reveal the total amount he had expended to purchase supplies for his business during the three-year period. To compute this missing financial record, Mr. Armel checked with over half of Mr. Vitale's major suppliers to determine the amount of supplies they had actually delivered to Joe's Pizza. Comparing the amount of supplies actually delivered with the amount shown on Mr. Vitale's books and records, the Department of Revenue auditor arrived at a percentage figure by which the books and records understated the amount of supplies pur-

chased. Because of the large amount of time and work it took in extracting this information, Mr. Armel applied these various percentages of error to plaintiff's remaining smaller suppliers to determine plaintiff's actual purchases from these suppliers.

Another technique used by the auditors to fill the gaps in the taxpayer's books and records involved another assumption. Based on an average mark-up over cost of 36%, the auditor calculated the gross retail sales in Mr. Vitale's business for the years 1976, 1977 and 1978. The source of the 36% figure was the Department of Revenue which based its determination on a survey of various pizza restaurants conducted by Gilbert Scheller. Mr. Scheller testified as to the restaurant records he surveyed and submitted to the Department to determine the mark-up figure. Furthermore, Scheller was subject to cross-examination on how he arrived at the mark-up figures from the businesses he surveyed. The pizza restaurants surveyed included Pizza Hut and Angelo's.

Using the two auditing techniques previously discussed, and applying the percentage assumptions calculated using both techniques, the Department of Revenue prepared corrected tax returns for the taxpayer. Those corrected tax returns demonstrated a substantial understatement of tax for all three periods. Specifically, the plaintiff understated his receipts by as much as 203% in 1976, 150% in 1977, and 127% in 1978. The taxpayer contends on appeal that the technique used by the Department of Revenue cannot sustain the deficiency tax which was assessed, and cannot constitute clear and convincing evidence of fraud.

The Illinois law establishing a liability for retailer's occupation tax, or sales tax, provides that corrected tax returns prepared by the Department of Revenue are *prima facie* proof of the correctness of the amount of tax due. (Ill. Rev. Stat. 1981, ch. 120, par. 443.) However, the corrected returns are only *prima facie* proof if the Department has met some minimum standard of reasonableness in preparing the corrected returns. (*Fillichio v. Department of Revenue* (1958), 15 Ill. 2d 327, 155 N.E.2d 3.) In this case, it would appear that the techniques used by the Department of Revenue were not arbitrary or unreasonable, but rather were based on reasonable statistical assumptions. The Department presented its case with exhibits, including its audit files and work papers, and produced its witnesses, Gary Armel and Gilbert Scheller. The audit techniques used by the Department, techniques which were made necessary only by reason of the plaintiff's failure to maintain adequate records, were not designed by whim or caprice, but rather represented a studied effort to recon-

struct with limited information, and much hard work, the taxpayer's business records. The auditors used fair-minded statistical assumptions. This is all the law requires. (*Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238.) To place a greater burden on the Department would reward the taxpayer for failing to keep the business records the law requires.

■ The taxpayer can overcome the Department's *prima facie* case, but only if he produces competent evidence, identified with the taxpayer's books and records, showing that the Department of Revenue's corrected returns are inaccurate. (*Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 376 N.E.2d 324.) A taxpayer does not overcome the Department's *prima facie* case merely by denying the Department's case or by suggesting hypothetical weaknesses. He must establish by documentary evidence that the hypothetical weaknesses are relevant to his business. (*Copilevitz v. Department of Revenue* (1968), 41 Ill. 2d 154, 242 N.E.2d 205.) At the administrative hearing, Mr. Vitale offered a number of hypothetical situations which, if true, would invalidate the auditing techniques and the statistical assumptions of the Department of Revenue. None of the hypothetical situations offered were identified with the taxpayer's records so as to demonstrate that the corrected returns of the Department were inaccurate. For this reason, the taxpayer has failed in his burden of overcoming the *prima facie* proof offered by the Department of Revenue.

■ Finally, the plaintiff asserts that evidence of his fraud in filing the tax returns was not clear and convincing. The fraud alleged by the Department of Revenue would result in civil penalties under section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 443). A similar but criminal fraud penalty is provided for in section 13 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 452). In discussing that criminal penalty, our reviewing courts have determined that proof of fraud requires proof of the element of intent. (*People v. L & M Liquors, Inc.* (1976), 37 Ill. App. 3d 117, 345 N.E.2d 817.) Intent may be shown by circumstantial evidence. (*People v. L & M Liquors, Inc.*) In the instant case, where the plaintiff understated his receipts by as much as 200%, where the plaintiff's bank deposits exceeded his gross receipts by $25,000 a year, and where in one year the plaintiff's purchases exceeded his sales by 46%, coupled with the plaintiff's total failure to maintain business records or to explain his underpayment of taxes, we agree with the Department of Revenue and the circuit court of Mercer County that the circumstantial evidence is sufficient to show clearly and convincingly that fraud was present.

In reliance on the authorities hereinabove set forth, and for the reasons previously discussed, the decision of the circuit court of Mercer County is hereby affirmed.

Affirmed.

HEIPLE and BARRY, JJ., concur.