GENE SMITH *et al.*, Plaintiffs-Appellants, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Fifth District No. 5—85—0429

Opinion filed May 14, 1986.

Ralph J. Derango, of Belleville, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones-Stewart, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiffs, Gene and Pansy Smith and Delvis G. Smith, Jr., appeal from a judgment of the circuit court of St. Clair County affirming, on administrative review, final assessments imposed on them by defendant, the Department of Revenue (hereinafter referred to as the Department), for tax deficiencies due under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 440 *et seq.*), the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1983, ch. 24, par. 8—11—1) and section 5.01 of the Local Mass Transit District Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 355.01). We affirm.

Plaintiffs are family members who owned and operated seven furniture stores in Illinois for varying periods of time between 1974 and 1982. Pansy Smith is Gene Smith's wife. Delvis G. Smith, Jr., is his son. Their furniture stores were located in O'Fallon, Waterloo, Fairview Heights, Collinsville, Granite City, Wood River and Mascoutah. The Department conducted an investigation and audit of these stores and determined that taxes were due for which no returns had been filed. The Department therefore compiled corrected returns and issued notices of tax liability to plaintiffs. These notices assessed retailers' occupation tax (ROT), municipal retailers' occupation tax (MROT) and local mass transit district tax (MTD) delinquencies in the amount of $20,933.12, penalties in the amount of $4,386.61 and interest in the amount of $9,818.09.

Plaintiffs each contested the notices. They requested and were granted an administrative hearing by the Department, which was con-

vened on January 5, 1984, and continued on March 28, 1984. The Department entered into evidence numerous documents, including its corrected returns, notices of tax liability, plaintiffs' letter of protest and request for hearing, notices of hearings, post office return receipts related to the various notices, and the hearing officer's letter of authorization. In addition, testimony was adduced from Bernie Saner, an agent for the Department's investigation division, and Richard Foy, one of the Department's auditors. Plaintiffs were represented by counsel. Gene Smith gave testimony on plaintiffs' behalf, but Pansy and Delvis did not appear. Plaintiffs offered no documentary evidence.

Following the March 28 hearing, the hearing officer rendered his disposition in which he recommended that the notices of tax liability be upheld. The Department then issued its final assessments, including penalties and additional accrued interest, in the following amounts:

| Store | Period | Type of Tax | Tax Amount | Penalty | Interest | Total |
|---|---|---|---|---|---|---|
| O'Fallon | 1/82-3/82 | ROT & MROT | $ 1,219.14 | $ 243.83 | $ 633.94 | $ 2,096.91 |
| O'Fallon | 1/82-3/82 | MTD | 60.96 | 12.19 | 31.70 | 104.85 |
| Waterloo | 9/82-10/82 | ROT & MROT | 586.03 | 117.20 | 158.22 | 861.45 |
| Fairview Hgts. | 4/81-8/82 | ROT & MROT | 12,816.75 | 2,763.35 | 7,416.08 | 22,996.18 |
| Fairview Hgts. | 4/81-12/81 | MTD | 325.12 | 65.02 | 205.33 | 595.47 |
| Fairview Hgts. | 1/82-8/82 | MTD | 325.12 | 65.02 | 152.80 | 542.94 |
| Collinsville | 1/79-6/79 | ROT & MROT | 2,400.00 | 480.00 | 2,222.00 | 5,100.00 |
| Granite City | 1/82-2/82 | ROT & MROT | 800.00 | 160.00 | 424.00 | 1,384.00 |
| Wood River | 1/74-3/74 | ROT & MROT | 1,200.00 | 240.00 | 1,848.00 | 3,288.00 |
| Mascoutah | 1/80-3/80 | ROT & MROT | 1,200.00 | 240.00 | 984.00 | 2,424.00 |
| Total: | | | $20,933.12 | $4,386.61 | $14,074.07 | $39,393.80 |

On July 6, 1984, plaintiffs filed a joint complaint for administrative review of the Department's final assessments pursuant to the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) in the circuit court of St. Clair County. In January of 1985, the Department filed a motion for summary judgment, with supporting authorities, contending that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law. The Department's motion was granted, and its final assessments were thus affirmed. The circuit court denied plaintiffs' subsequent motion to reconsider. Plaintiffs now appeal on the grounds that there was in-

sufficient evidence to support the tax deficiencies assessed by the Department. This claim is without merit.

The record shows that the Department's assessments were determined as follows. A referral was made to the Department's investigation division from the State of Missouri indicating that Gene Smith was operating furniture stores in Illinois. Bernie Saner established through a confidential source that Smith had operated seven such stores on the Illinois side of the St. Louis metropolitan area. Only two of these stores, in O'Fallon and Waterloo, were registered with the Department as of October, 1982. The Department had no evidence of any tax payment or sales-tax registration with regard to the remaining five.

Saner testified that he and Richard Foy, a Department auditor, visited the Waterloo store in the latter part of October, 1982. They obtained sales invoices from that store covering a one-month period between September and October, 1982. The invoices were provided by John Williams, a salesman who was managing the store. Saner was given a list of the other stores and information concerning their ownership and operation, including the involvement of Smith's wife and son, by a confidential source. After obtaining this information, Saner interviewed Gene Smith, himself, who admitted operating the stores and advised Saner of the periods of operation. Saner confirmed the operation period of the O'Fallon stores by obtaining copies of the lease from the landlord, a VFW post, and learned that Smith had leased the building and paid rent on it for three months: January, February and March of 1982. Saner similarly confirmed the operation period of the Fairview Heights store through a lease which showed that Smith and his wife, Pansy, rented it for a 17-month period beginning in April, 1981 and ending in August, 1982. Saner visited the premises where the Fairview Heights store was located, but it was no longer in business and he made a visual estimate of its size from outside. The remaining stores were also closed by this time, and neither Saner nor Foy personally viewed any of them.

Section 7 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 446) states:

> "Every person engaged in the business of selling tangible personal property at retail in this State shall keep records and books of all sales of tangible personal property ***."

The duty to keep such records and books is a mandatory one. (*Lakeland Construction Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 1036, 1039, 379 N.E.2d 859, 861.) Except for the one-month period at the Waterloo store, however, plaintiffs could not produce and the

Department was unable to obtain sales records for any of the stores for the periods in question. Accordingly, Saner recommended that the gross sales and tax calculations for the stores be based on the one month of invoices from the Waterloo store which could be documented. Those invoices showed gross sales for the month of $8,000.

Richard Foy, who conducted the audit for the Department, testified that taxable sales for each of the stores but the one in Fairview Heights were computed by projecting this $8,000 per month figure based on the length of time the store operated. The difference in the Fairview Heights calculation was the Foy assumed gross sales there to be double those of the Waterloo store. This assumption, made at Saner's direction, was premised on the considerably larger size of the Fairview Heights store, as observed by Saner, and its location in a more populous section of the St. Louis metropolitan area.

■■ ■ Section 5 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 444) expressly provides that where, as here, a person subject to the Act fails to file a return, the Department is required to determine the amount of tax due according to its best judgment and information. The Department's determination is *prima facie* correct and constitutes *prima facie* proof of the correctness of the amount of tax due. (Ill. Rev. Stat. 1983, ch. 120, par. 444.) The Department is not required to substantiate the basis for its determination by placing into evidence plaintiffs' books and records. (*Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 15, 376 N.E.2d 324, 328.) If the method employed by the Department to calculate the amount of tax due is called into question, the record must show only that the techniques and assumptions which the Department used met some minimum standard of reasonableness. (60 Ill. App. 3d 11, 14, 376 N.E.2d 324, 327.) The parties do not dispute that these principles are equally applicable to the Department's determination as to plaintiffs' liability under the Municipal Retailers' Occupation Tax Act (see Ill. Rev. Stat. 1983, ch. 24, par. 8—11—1) and the Local Mass Transit District Act (see Ill. Rev. Stat. 1983, ch. 111²/₃, par. 355.01(c)).

The basis for the Department's determination in this case was not arbitrary or unreasonable. While reliance was made on matters which might otherwise be objectionable as hearsay, such reliance was permissible given plaintiffs' failure to produce adequate documentation. (*Puleo v. Department of Revenue* (1983), 117 Ill. App. 3d 260, 267, 453 N.E.2d 48, 52.) The Department used the best information available to it, made a studied effort to compute plaintiffs' tax liability according to fair-minded assumptions, placed into evidence the corrected returns and called as witnesses at the administrative hearing the audi-

tor and investigator responsible for those returns so that their calculations could be explained to the hearing officer and challenged by the plaintiffs through cross-examination. As one court recently noted, "This is all the law requires. [Citation.] To place a greater burden on the Department would reward the taxpayer for failing to keep the business records the law requires." *Vitale v. Department of Revenue* (1983), 118 Ill. App. 3d 210, 212-13, 454 N.E.2d 799, 801.

■ Because the Department thus properly established its *prima facie* case, the burden was on plaintiffs to produce competent evidence, identified by their books and records, showing that the Department's assessments were inaccurate. (118 Ill. App. 3d 210, 213, 454 N.E.2d 799, 802.) This they failed to do. The sole evidence adduced by plaintiffs consisted of the testimony of Gene Smith. Smith stated that he was connected with each of the seven stores in question and was familiar with their operation. He disputed the legitimacy of using the one-month of sales invoices from the Waterloo store to project sales figures for the other establishments. According to Smith, the Waterloo store was 4,000 square feet in size with an additional 8,000 square feet of storage, and was wide open. By comparison, the O'Fallon store measured only 3,000 to 3,500 square feet; the Granite City store, 1,300 to 1,400 square feet; the Wood River store, 2,200 square feet; and the Mascoutah store, 1,800 to 2,000 square feet. He described the Fairview Heights store as containing 3,700 square feet of display area, and rather than being larger than the Waterloo store, thought that it could fit within that store's dimensions. Smith also believed that the Fairview Heights store had a smaller display area because it was broken up by partitions into offices, bathrooms and a store room. Saner had previously testified that he observed no such partitions during his inspection.

In addition to size differences, Smith stated that the Waterloo store was not representative because the records obtained there covered a period during which a "going-out-of-business" sale was underway. Saner, however, related that he had obtained information from the Missouri Attorney General's office indicating that such going-out-of-business sales were characteristic of other stores owned or operated by Smith. Moreover, Smith, himself, admitted that going-out-of-business sales were conducted at the other stores in question, although the duration of the sales differed. He doubted whether the Waterloo location did more business than the others during the sales and stated that "we had nothing down there [in Waterloo] until we put the going-out-of-business signs up and run [*sic*] the going-out-of-business ads," after which "we did a little business."

Although the dates of operation were originally supplied to the Department by Smith, he testified that the O'Fallon store operated only 30 days, not the three months assessed, and was just used for storage, while occupancy of the Fairview Heights store began not in April of 1981, as claimed, but in June. He further testified that the sales totals for all stores, excluding Collinsville, were less than $150,000; that the total sales for Fairview Heights during its entire period of operation were between $80,000 and $100,000; and that the monthly sales figures imputed to Fairview Heights were "way too high for all of them [the stores] put together." He added, however, that he could not recall the gross sales of the Fairview Heights store and stated "whatever I say would be an estimate." Finally, Smith pointed out that the Fairview Heights store was actually located in French Village, near East St. Louis, and was not in the main Fairview Heights shopping area. He said the store had an East St. Louis telephone number and that he had difficulty getting customers to go there, but acknowledged on cross-examination that it was his best store in terms of sales volume "under normal conditions."

 ▌ While Smith's testimony was equivocal on many points, his statements, if true, would have cast some doubt of the accuracy of the Department's calculations. None of those statements, however, was corroborated by records and books of the stores in question. As previously noted, except for the one month of records from the Waterloo store, no documentation of any kind was adduced by plaintiffs. Under these circumstances, Smith's testimony was little more than a bare challenge to the Department's assessments. The law is well settled that a taxpayer cannot overcome the Department's *prima facie* case merely by denying the accuracy of the Department's assessments or by suggesting hypothetical weaknesses. (*Vitale v. Department of Revenue* (1983), 118 Ill. App. 3d 210, 213, 454 N.E.2d 799, 802; *Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 15-16, 376 N.E.2d 324, 328.) Moreover, plaintiffs' failure to produce their records permits a negative inference that if the records had been produced, they would have reflected unfavorably on plaintiffs' position. (*Lakeland Construction Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 1036, 1039, 379 N.E.2d 859, 861.) Unaccompanied as it was by documentary support, plaintiffs' challenge was therefore insufficient to overcome the Department's *prima facie* case. See *Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132, 1135, 421 N.E.2d 1030, 1032.

██ In addition to contesting the amount of the Department's assessments, plaintiffs also contend that the Department failed to estab-

lish the liability of Pansy or Delvis Smith. This claim can be disposed of summarily. Bernie Saner testified that he obtained information regarding the Smiths' ownership and operation of the stores from a confidential source and observed that Pansy's name appeared on the Fairview Heights lease. Even without this testimony, however, the Department's final assessments would still have been valid. Pansy and Delvis both received notices of liability and notices of the administrative hearing, but neither appeared. At that hearing, plaintiffs' attorney raised no objection and adduced no evidence regarding the tax liability of these two individuals. Applying the principles previously discussed, the Department was therefore not required to make any further showing in support of its *prima facie* case, and the tax, as finally assessed, must be presumed to have been legally levied. See also *Tatz v. Department of Revenue* (1945), 391 Ill. 131, 134-35, 62 N.E.2d 545.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.