CLARK OIL & REFINING CORPORATION, Plaintiff-Appellant, v. J. THOMAS JOHNSON, Director of the Department of Revenue, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 84—0279

Opinion filed March 31, 1987.

McDermott, Will & Emery, of Chicago (Hamilton Smith, Stewart W. Karge, and John J. Jawor, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff-taxpayer, Clark Oil & Refining Corporation, brought this tax protest action against J. Thomas Johnson, Director of the Department of Revenue of the State of Illinois, and James H. Donnewald, State Treasurer of the State of Illinois, to contest the validity of use taxes assessed against it. The $11,045,087.25 in taxes and interest for the period July 1, 1978, to June 30, 1981, were paid by Clark Oil under protest pursuant to "An Act in relation to the payment and disposition of moneys received ***" (the Monies Act) (Ill. Rev. Stat. 1981, ch. 127, par. 170 et seq.). The taxes were assessed on Clark Oil's use of certain "refinery fuels," which are products created incidentally to the oil-refining process. Following a bench trial, the trial court upheld the validity of the assessment, but provided for the return of $291,037.14 to Clark Oil due to an error in computation made by the Department of Revenue. Clark Oil appeals. The gist of the arguments

raised by Clark Oil are that (1) the Use Tax Act (Act) (Ill. Rev. Stat. 1981, ch. 120, par. 439.1 *et seq.*) is unconstitutionally vague as applied; (2) the Department of Revenue's formula for calculating the use tax was unreasonable; (3) Public Act 83—614, which amended the Use Tax Act, should be applied here; and (4) the actual calculations made by the Department were arbitrary. We affirm.

During the taxable period at issue, Clark Oil purchased crude oil for the purpose of refining it into various marketable products at its Blue Island and Wood River refineries located in Illinois. The purpose of refining is to produce as many marketable products, and as much of such products, as is possible. Under current technology, however, three products which have little or no marketability are invariably produced during the refining process. These products are catalytic coke, process gas, and heavy oil, and they are sometimes generally referred to as refinery fuels because refineries have developed techniques to use them as energy sources for the refining process.

The presence of refinery fuels in the refineries may be briefly described as follows. At the beginning of the refining process, the crude oil is heated to a high temperature, and it travels to an atmospheric tower where a separation of components occurs. Some of these components proceed to a vacuum unit where vacuum gas oil is separated out and sent to the catalytic cracker or Fluid Catalytic Cracking unit (FCC). In the FCC unit, a catalyst, which is a very fine powder, is in constant motion, and it promotes the breakdown (or "cracking") of the molecules in the vacuum gas oil. As this process occurs, catalytic coke adheres to the catalyst, with the result that the catalyst is neutralized. Consequently, it is necessary to remove the catalytic coke from the catalyst. To this end, the catalytic coke is burned off and thereby converted into flue gas. The flue gas is then captured and used as an energy source to generate heat which is used in the refining process. There is no market for catalytic coke, and, therefore, catalytic coke has no market value.

Process gas is generated at various stages of the refining process. A substantial part of the process gas is captured and becomes an energy source when it is burned in heaters at various processing units. At times, more process gas is created than can be utilized, and in order not to violate Environmental Protection Agency regulations, Clark Oil flares the excess process gas, thereby dissipating it. Clark Oil does not derive any heat value from such flaring. Since Clark Oil's refineries are not proximate to facilities which use process gas as an energy source, it has no market for the process gas.

The third product which results from the refining process that is

subject to the use tax is heavy oil. Some of the heavy oil which is produced is marketed. When the heavy oil is combined with a lower viscosity dilutant, it is sold by Clark Oil as No. 6 fuel oil. Also, some heavy oil is sold for use in asphalt products. Clark Oil uses heavy oil generated during the refining process when there is insufficient process gas available to satisfy a refinery's heating needs. In such situations, heavy oil is burned when it would be cheaper to do so than to purchase natural gas to meet heating demands.

The use tax at issue here was assessed by the Department pursuant to the Use Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 439.1 *et seq.*) on Clark Oil's use of its refinery fuels for heating purposes. The formula used by the Department to compute the tax was essentially based upon the difference between the volume of the crude oil purchased and the volume of marketable production adjusted for the expansion which occurs during the refining process, measured by the purchase price of the crude oil.

█ In its first argument, Clark Oil contends that the Use Tax Act is unconstitutionally vague to the extent that it does not provide how the selling price,[1] which is the measure of the tax due, should be allocated where, as here, the two parts of the purchased property are not physically the same. Under section 3 of the Use Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 439.3), "[a] tax is imposed upon the privilege of using in this State tangible personal property *** purchased at retail from a retailer. Such tax is at the rate of 4% of the selling price of such property." Section 2 of the Act defines selling price as "the consideration for a sale valued in money." Ill. Rev. Stat. 1981, ch. 120, par. 439.2.

A legislative enactment is unconstitutionally vague if its terms are so indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application. (*Fagiano v. Police Board* (1983), 98 Ill. 2d 277, 282, 456 N.E.2d 27, 29.) Here, the term "selling price" is specifically defined by the Act in a clear and unambiguous manner. We do not believe that the statute is unconstitutionally vague merely because its exact application to all factual variations is not delineated therein. See *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 269, 408 N.E.2d 204, 208.

Moreover, in *Mobil Oil Corp. v. Johnson* (1982), 93 Ill. 2d 126, 442 N.E.2d 846, the supreme court rejected a similar claim that the use tax as applied to the use of refinery fuels resulting from the process of refining crude oil was unconstitutionally vague. Clark Oil attempts

---

[1]Here, the "selling price" is the price paid for the crude oil.

to distinguish *Mobil Oil* on the basis that the *Mobil Oil* court was not apprised that "the part of the crude oil which became refinery fuels consumed by [the refinery] was not physically the same as the part which became marketable production resold by [the refinery]," while this fact was established in the present case. According to Clark Oil, although "[t]he majority did observe in *Mobil* that the refinery fuels were chemically different than the crude oil, different in molecular structure, *** that was not to suggest that the part of the crude oil which became refinery fuels was chemically or physically different than the part which became marketable production." We believe that this argument is mere casuistry. The *Mobil Oil* decision evidences the supreme court's firm and complete understanding of the refining process and the difficulties inherent in determining the basis on which the use tax should be assessed. The court unequivocally concluded that while the refinery fuels may not exist in crude oil in the chemical sense, they are produced from crude oil during the chemical restructuring of molecules. (93 Ill. 2d 126, 132, 442 N.E.2d 846, 849.) Moreover, Clark Oil suggests that the partially concurring and partially dissenting opinion in *Mobil Oil* recognized the physical differences between the parts of the crude oil which became refinery fuels and the parts which became marketable production. We see no reason to assume that the majority did not have the benefit of the views of the partially concurring and partially dissenting judges in reaching its own conclusions.

In further challenging the constitutionality of the use tax, Clark Oil contends that the Act impermissibly delegates legislative authority to the Department, in that the Department has too much discretion in determining the method of assessing the tax. We disagree. The legislature determined that the basis for computing the use tax is the selling price. The Department is vested with broad powers to administer the Use Tax Act (See Ill. Rev. Stat. 1981, ch. 120, par. 611; Ill. Rev. Stat. 1981, ch. 127, par. 39b28), and implicit in the powers granted to it in the Act and elsewhere in the statutes is the authority to establish the method by which use taxes are to be calculated. It has been recognized that "[t]he legislature cannot deal with the details of every particular case, and reasonable discretion as to the manner of executing a law must necessarily be given to administrative officers." (*Department of Finance v. Cohen* (1938), 369 Ill. 510, 516, 17 N.E.2d 327, 329.) Our supreme court recognized long ago that "to establish the principle that whatever the legislature shall do it shall do in every detail or else it will go undone, would, in effect, destroy the government." (*People ex rel. Board of Education v. Board of Education*

(1942), 380 Ill. 311, 318, 43 N.E.2d 1012, 1015, quoting *Sheldon v. Hoyne* (1913), 261 Ill. 222, 225, 103 N.E. 1021, 1022.) For these reasons, we conclude that the Department had the authority to implement the measure of use tax prescribed by the legislature and that the Use Tax Act as applied to Clark Oil is not unconstitutional.

■ Next, in a series of related arguments, Clark Oil contends that allocation of the selling price on the basis of relative volume is unreasonable. Clark Oil suggests alternative methods of computing the use tax which it claims that the legislature should be deemed to have contemplated since these methods comport with well-accepted accounting principles. Clark Oil states that it is unreasonable to suppose that it intended to pay as much per unit of volume for the part of the crude oil which became refinery fuels as it did for the part which became marketable production and, therefore, relative volume should not be the basis for allocating the selling price. Rather, Clark Oil argues, the allocation should be made on the basis of regression analysis or relative sales value, since either of these methods would provide a more economically sound basis for computing the tax.

According to Clark Oil's expert, regression analysis is a statistical technique for identifying relationships between two or more variables in some substances. It is a statistical tool used in the calculation of implicit prices. As an example, if a man purchased a car for $10,000 on the basis of its roominess and its horsepower, the implicit price would have to do with how much was paid for the one attribute and how much was paid for the other. If this method were to be applied in the present case, Clark Oil would not owe any use tax on its use of process gas and catalytic coke because no part of the "selling price" it paid for the crude oil was paid for those substances. There is no evidence in the record as to the amount of tax that would be due on the heavy oil burned under regression analysis.

Under Clark Oil's alternative theory of computation, relative sales value, the cost assigned to each product is based upon its relative share of the total amounts received when all of the products are sold. Since catalytic coke and process gas are not sold, they have no market value, and no tax could be assessed on their use. Further, since the market value of heavy oil is substantially lower than the market value of the other marketable products produced from crude oil, the heavy oil would be assigned a cost below that of the crude oil.

We believe that the *Mobil Oil* decision is dispositive of the arguments raised by Clark Oil. In *Mobil Oil*, the supreme court approved the relative volume approach used by the Department. In so doing, the court rejected Mobil Oil's argument that the relative sales value

approach should be utilized. (*Mobil Oil Corp. v. Johnson* (1982), 93 Ill. 2d 126, 139-40, 442 N.E.2d 846, 852-53.) Clark Oil argues that the supreme court misconceived Mobil Oil's argument. However, regardless of the views of this court as to the merits of the relative sales value approach or the regression analysis approach, or as to the correctness of the supreme court's decision, a supreme court decision is the law of the State, and it is binding upon both the circuit and appellate courts. (See *Friendship Manor of the Branch of King's Daughters & Sons, Inc. v. Department of Revenue* (1980), 91 Ill. App. 3d 91, 95, 414 N.E.2d 525, 528.) Accordingly, once the supreme court has declared the law on any point, we may not refuse to follow it, no matter what our personal views might be, because the supreme court alone has the power to overrule or modify its decisions. (*People v. Jones* (1983), 114 Ill. App. 3d 576, 585, 449 N.E.2d 547, 555.) In view of the supreme court's recent determination in *Mobil Oil* that the relative volume approach used by the Department is proper, we must reject the alternative methods of calculation preferred by Clark Oil.

■ Furthermore, we are unpersuaded by Clark Oil's argument that Public Act 83—614, which amended section 3 of the Use Tax Act, shows the legislature's intent that the relative sales value approach must be used. The amendment, which occurred following the *Mobil Oil* decision, provided that the tax is to be imposed at a rate of the stated percentage of either the selling price or the fair market value, if any. More specifically, the amendment provided, "In all cases wherein property functionally used or consumed is a by-product or waste product which has been refined, manufactured or produced from property purchased at retail, then the tax is imposed on the lower of the fair market value, if any, of the specific property so used in this State *or* on the selling price of the property purchased at retail." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 120, par. 439.3.) This amendment became effective on January 1, 1984. Clark Oil argues that the amendment is applicable here because it did not change existing law but merely clarified the law as it existed before. We disagree. The amendment did not merely clarify existing law, but actually changed it. Contrary to Clark Oil's argument, the amendment does not demonstrate that the selling price is to be measured by the fair market value. Rather, the amendment retains the selling price as a valid measure of the use tax but, in addition, it provides that the fair market value is to be an *alternative* measure of the use tax. While the legislature could have provided a means of determining selling price other than on the basis of relative volume, it clearly did not choose to do so.

■ Moreover, we must reject Clark Oil's argument, based on *General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 469 N.E.2d 1067, that the amendment should be retroactively applied to this case. Clark Oil's reliance on *General Telephone Co.* is misplaced. In *General Telephone*, the legislature explicitly made the amendment at issue retroactive. So, too, in the more recent case of *Sanelli v. Glenview State Bank* (1985), 108 Ill. 2d 1, 483 N.E.2d 226, where another statute was found to be retroactive, the legislature provided for the amendment to be applicable to the relevant circumstances whether they arose before, on, or after the effective date of the Act. (108 Ill. 2d 1, 8-9, 483 N.E.2d 226, 229.) No similar intent is stated in the amendment at issue here. Generally, unless the legislature gives a clear expression of its intent to make an amendment retroactive, the amendment will be construed as prospective. (*Fireside Chrysler-Plymouth Mazda, Inc. v. Chrysler Corp.* (1984), 129 Ill. App. 3d 575, 581, 472 N.E.2d 861, 865-66; see *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390, 415 N.E.2d 1034, 1041.) We conclude that retroactivity would be improper here because the amendment did not "clearly, by express language or necessary implication, [indicate] that the legislature intended a retroactive application." 2 A. Sutherland, Statutory Construction sec. 41.04, at 348 (4th ed. 1986).

■ Next, Clark Oil argues that the Department's construction of the Act is discriminatory and violates Clark Oil's right to equal protection because it taxes the waste of a purchaser-user while not taxing the waste of a purchaser-reseller. We find this argument to be untenable. Clark Oil was not taxed on its waste but on its intentional use of refinery fuels. Although Clark Oil may, for various business purposes, identify refinery fuels as waste, such a denomination does not alter the fact that Clark Oil purposely utilized the refinery fuels for heating purposes. The privilege of using this tangible personal property was clearly subject to taxation under the Use Tax Act. We therefore find no basis for Clark Oil's equal protection argument.

■ Clark Oil further posits that use of the relative volume approach results in double taxation. Double taxation exists where two taxes are imposed for the same period of time, for the same purpose, upon the same property, and by the same taxing authority. (See *People ex rel. Bernardi v. Bethune Plaza, Inc.* (1984), 124 Ill. App. 3d 791, 793, 464 N.E.2d 1116, 1118.) According to Clark Oil, the double taxation results "because Clark Oil during the taxable period intended to, and did, recover the full cost of the crude oil when it sold its products at retail and at wholesale. It and its customers were effectively taxed on all of the crude oil at the retail level. When Clark Oil is

taxed again at the wholesale level on that part of the crude oil which becomes process gas or catalytic coke, that part is taxed twice."

We agree with the trial court's finding that the fact that Clark Oil raised the price of its premium products to cover the full cost of the crude oil does not demonstrate double taxation. As the trial court recognized, this is not the legal criterion for determination that there has been impermissible double taxation. Nor did Clark Oil prove that the same property was actually taxed twice. Its conclusory statement that it was taxed twice on the crude oil is insufficient to establish its claim that such double taxation occurred.

■■ In its final argument, Clark Oil contends that the formula devised by the Department to determine which part of the crude oil became refinery fuels and which part became marketable products was unworkable in practice and improperly applied by the Department. According to Clark Oil, the Department's formula did not take into account the loss of process gas due to flaring, did not take into account the costs of inputs other than the crude oil and, most importantly, the 4% expansion figure used by the Department was arbitrary and capricious. The formula used by the Department in establishing the relative volumes of those parts of the crude oil which became refinery fuels and those parts which became marketable products was expressed by Clark Oil as follows:

$$\text{barrels consumed} = \text{barrels of inputs} - \frac{\text{barrels of marketable production}}{\text{expansion factor}}$$

Under section 4 of the Retailers' Occupation Tax Act, the Department's correction of a taxpayer's return according to its "best judgment and information" is *prima facie* correct and is *prima facie* evidence of the correctness of the tax due. (Ill. Rev. Stat. 1981, ch. 120, par. 443.) This provision is applicable to the Use Tax Act. (See Ill. Rev. Stat. 1981, ch. 120, par. 439.12.) The method employed by the Department in correcting a taxpayer's return must meet a minimum standard of reasonableness. (See *Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 14, 376 N.E.2d 324, 327.) Under the circumstances of this case, we believe that this standard has been met.

The record shows that the formula devised by the Department evolved after the Department's discussions with Mobil Oil and an outside consultant, Data Graphics, and it reflects the Department's experience in auditing other oil companies. As for the problems of which Clark Oil complains, we must agree with the trial court that the basis for the problems here was Clark Oil's failure to provide the Department with the appropriate, relevant data. The record shows that Clark Oil was familiar with the formula in that Clark Oil was in com-

munication with Mobil Oil during Mobil Oil's audit in order to assist Mobil Oil. Furthermore, the Department advised Clark Oil of the formula and the data that it would need in order to conduct its audit. Although there was conflicting testimony as to what data was requested, the conflicts merely raised questions of credibility which the trial court decided in favor of the Department. The fact is that Clark Oil was aware of the information necessary for the completion of the audit, yet only supplied the Department with a single yield report which contained but a portion of the information which was required. Clark Oil also made no effort to explain the information which it did provide to the Department, although it now faults the Department for failing to understand some of this information.

Regarding the specific problems raised by Clark Oil, the record shows that Clark Oil never informed the Department of the cost of the inputs other than the crude oil. Also, Clark Oil never provided the Department with any information regarding the amount of process gas which was flared and thus not subject to taxation. As for Clark Oil's main contention, that the 4% expansion figure was arbitrary, the record shows that the Department was put in the position of having to estimate this figure because of Clark Oil's lack of cooperation. We do not believe that this figure is so arbitrary that it cannot be sustained. During its audit of Mobil Oil, the Department determined that the expansion factor in the refining process is generally between 3% and 7%. The expansion factor refers to the fact that as a result of the refining process, chemical reactions take place which create molecular structures that occupy more physical space than that occupied by the original oil. The Department determined that the expansion rate for Mobil Oil was 4.5%. In the present case, the Department adjusted the rate down to only 4% on the basis that Clark Oil's refineries are older than Mobil Oil's and therefore likely to be less efficient. While it is true that Clark Oil presented evidence that there can be negative expansion, one of Clark Oil's witnesses testified on cross-examination that for the taxable period, Clark Oil's reports show that the expansion was significantly higher than 4%. Finally, we agree with the Department that the record does not support Clark Oil's claim that the Department improperly utilized an overall expansion rate rather than the marketable production expansion rate when it made its calculations.

■ Once the Department established its *prima facie* case, the burden shifted to Clark Oil to overcome it. It was incumbent upon Clark Oil to produce books and records showing that the Department's corrected returns were in error. (*Masini v. Department of*

*Revenue* (1978), 60 Ill. App. 3d 11, 15, 376 N.E.2d 324, 327.) Here, although Clark Oil presented at trial testimony and reports (which, we note, were never made available to the Department during its audit), the evidence still left gaps of information which make the corrections sought by Clark Oil impossible to calculate. Furthermore, Clark Oil's insistence that the Department's formula is unworkable under any circumstances and, therefore, it would not matter what information it presented, is simply not a sufficient basis for us to declare the formula unreasonable. We point out that in *Mobil Oil*, Mobil Oil was willing to stipulate to the mechanics of this "unworkable" formula, and the supreme court pointed out that "[t]he formula used by the Department allocated an *ascertainable* percentage of the volume of the purchased crude oil to the production of refinery fuels." (Emphasis added.) (*Mobil Oil Corp. v. Johnson* (1982), 93 Ill. 2d 126, 138-39, 442 N.E.2d 846, 852.) While we recognize that the stipulation is not controlling here, it clearly indicates that the formula might be workable if the Department is provided with all relevant information. We therefore conclude that the Department's audit techniques, which were necessitated in large part by Clark Oil's refusal to cooperate, were not the result of mere whim or caprice. (See *Vitale v. Department of Revenue* (1983), 118 Ill. App. 3d 210, 212-13, 454 N.E.2d 799, 801.) Under the circumstances, we are unwilling to state, based on the record before us, that the Department's formula does not meet a minimum standard of reasonableness.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

WHITE and FREEMAN,* JJ., concur.

---

*Justice McGillicuddy heard oral arguments in the above case prior to her retirement. Since that time, Justice Freeman was designated the third member of the panel and has read the briefs.